LIGHTNER *v.* W. H. HILL CO.

Corporations—Stock and Stockholders—Fraud of President—Rescission—Accounting.

Where president of corporation, who dominated and directed its affairs, misrepresented its true condition and withheld valuable information from stockholder who sought to ascertain its true condition, and thereby succeeded in purchasing said stockholder's stock for less than it was worth, stockholder is entitled to rescission of sale and accounting for value of stock.

Appeal from Wayne; Shepherd (Frank), J., presiding. Submitted January 27, 1932. (Docket No. 105, Calendar No. 36,026.) Decided April 4, 1932. Rehearing denied June 6, 1932.

Bill by Clarence A. Lightner, against W. H. Hill Company, a Michigan corporation, and others to rescind a sale of corporate stock. Bill dismissed. Plaintiff appeals. Reversed.

*Lightner, Oxtoby, Hanley, Crawford & Dodd* and *Clarence A. Lightner* (*Walter E. Oxtoby,* of counsel), for plaintiff.

*Brown, Stoneman, Lorenzo & Springstun,* for defendants.

POTTER, J. November 5, 1926, plaintiff who, for many years, had been a stockholder in defendant W. H. Hill Company, a corporation, filed his bill of complaint in Wayne circuit in chancery against defendant W. H. Hill Company and W. H. Hill, personally, to rescind a sale by plaintiff of 40 shares of the capital stock of W. H. Hill Company to W. H. Hill, to direct the issuance of 200 shares of the corporation's stock to him, to appoint a receiver for the W. H. Hill Company, for an accounting, *ne exeat,* injunction, and other relief. From a decree for defendants, plaintiff appeals.

Plaintiff, in his bill of complaint, charges defendant W. H. Hill Company is a corporation dominated by defendant W. H. Hill; that while it had other directors than W. H. Hill, they were, in fact and in law, mere dummies, dominated and directed by W. H. Hill, defendant. The corporation was organized in 1907, with an authorized capital stock of $100,000, divided into 1,000 shares of the par value of $100 each, of which plaintiff owned 40 shares. The W. H.

Hill Company was engaged in the sale of proprietary medicines, manufactured and put up for it by pharmaceutical chemists, its business being principally the sale and distribution of the same. It made money, and in 1923 had United States government bonds and municipal bonds on hand of the value of more than $600,000. December 31, 1920, the capital stock of the W. H. Hill Company was increased from $100,000 to $1,000,000, and a 500 per cent. stock dividend declared. Plaintiff alleges he was not informed of the increase of the capital stock of the corporation to $1,000,000, nor of the declaration of the 500 per cent. stock dividend, but knowledge of the same was fraudulently concealed from him; and that no call for the surrender of his 40 shares of stock in the original corporation, and no knowledge of the 200 shares of stock, upon the basis of the new capitalization of the W. H. Hill Company, was given him. He alleges defendant W. H. Hill had from January 1, 1919, to January 1, 1924, monthly statements of the financial condition of the W. H. Hill Company, and knew such condition, whereas plaintiff knew but little of its financial condition; that plaintiff wanted, in May, 1923, to dispose of his stock in the W. H. Hill Company, and sought to ascertain the condition of the company for the purpose of determining the value of his stock, but defendants, when asked about the value of the stock, misrepresented its value and misled plaintiff as to the true condition of the W. H. Hill Company; that he was unable to obtain from the company's officers and employees the information he was entitled to as a stockholder of defendant W. H. Hill Company, and defendant W. H. Hill, by reason of the fraudulent representations made to plaintiff as to the condition of the company, and by reason of the fraudulent con-

cealment of the value of the stock therein, deceived
and misled plaintiff and secured for $16,080, stock
worth more than $80,000; that the trade-marks and
good will of the defendant W. H. Hill Company
were, November 6, 1924, sold for $1,175,000 and this
amount, plus the value of the other assets of the
defendant W. H. Hill Company on hand, brought
the cash value of the assets of defendant company
up to $2,232,000, and plaintiff was entitled to more
than $89,000 instead of approximately $16,000 which
he received for his stock; that after the sale of the
trade-marks of the W. H. Hill Company, the defend-
ant W. H. Hill took the proceeds of the sale of the
trade-marks and good will and deposited the same
in his own name, and took possession of the bonds
and other assets of the defendant W. H. Hill Com-
pany, and had removed and was about to remove the
same out of the State of Michigan.

The defendants W. H. Hill Company and W. H.
Hill by answer denied all fraud and false representa-
tions and deceit in connection with the acquisition
of plaintiff's stock.   They alleged plaintiff had full
and complete information as to the financial condi-
tion, policies, and operation of the defendant W. H.
Hill Company, of the increase in its capital stock,
the declaration of the stock dividend of 500 per cent.,
and that the assets of the company, $2,232,068.02
were in the hands of the defendant W. H. Hill as
liquidating trustee for the W. H. Hill Company to
pay the debts of the company and discharge the lia-
bilities thereof and for distribution in accordance
with the respective interests of the stockholders of
the W. H. Hill Company, and particularly defend-
ants deny any and all fraud in connection with the
purchase of plaintiff's stock; and, on the contrary,

allege plaintiff sold his stock because he wanted to sell it and get out of the company.

The business of the W. H. Hill Company organized as a Michigan corporation in 1907 was not manufacturing but selling. The proprietary medicines which it sold were manufactured for it by pharmaceutical chemists on contract. The W. H. Hill Company was successful and had accumulated by 1920 a substantial surplus which it had invested in United States government bonds and in municipal bonds. Mr. W. H. Kirn, formerly associated with the Larned Company, which, in 1923, purchased the trade-marks and good will of the W. H. Hill Company for $1,200,000, in 1913, on behalf of a syndicate of prospective purchasers, offered defendant W. H. Hill Company, through W. H. Hill, $500,000 for its trade-marks and good will, but W. H. Hill, with whom the negotiations were conducted, and who was in control of the W. H. Hill Company, though of course it had other stockholders and directors, thought such trade-marks and good will worth $1,000,000, and refused on the ground of inadequacy of price, the offer of 1913 of $500,000 therefor.

The business of the W. H. Hill Company was changed in 1920 so far as its financial structure and internal accounting was concerned. One Beck, who at the time of the hearing resided in Baltimore, Maryland, had been for several years a resident of Detroit, and acquainted with defendant W. H. Hill. W. H. Hill met Beck in Florida, and later employed him as an auditor for the defendant company. The United States revenue act of 1918 contained, it is said, a provision for a tax of 25 per cent. on the undistributed profits of corporations. The W. H. Hill Company had a surplus in bonds of more than

$500,000, and there was likelihood the government of the United States would demand from the defendant W. H. Hill Company revenue taxes, in accordance with the facts and law, of approximately $125,000. Mr. Beck called defendant W. H. Hill's attention to this situation, and Mr. Stellwagen and Mr. McKee Robison, two leading members of the Detroit bar, obtained in the fall of 1920 an authorization to increase the capital stock of the defendant W. H. Hill Company to $1,000,000. The company, at a meeting at which the plaintiff was not present, and of which he had no legal notice, voted to increase the authorized capital stock of the defendant W. H. Hill Company to $1,000,000, and to declare a stock dividend of 500 per cent. This, in legal effect, either distributed the $500,000 surplus to the stockholders and such stockholders in effect repaid the $500,000 to the W. H. Hill Company for $500,000 in capital stock of the W. H. Hill Company at par, or, in legal effect, it transferred the $500,000 to the treasury of the W. H. Hill Company as a part of its capital stock, for which the stockholders were entitled *pro rata* to the certificates of stock of the W. H. Hill Company representing their proportionate amount of the surplus thus transferred to the treasury of the company. In any event, the capital structure, after the increase of the capital stock of the defendant company to $1,000,000 and the declaration of the stock dividend of 500 per cent., was, authorized capital stock, $1,000,000; capital stock issued and outstanding, $600,000. It was stipulated by counsel that from 1920 on, so long as the defendant W. H. Hill Company continued to do business and make reports to the State and Federal governments, that after the increase in its capital stock and the declaration of the so-called 500 per cent.

stock dividend, as above stated, the defendant W. H. Hill Company represented to both the United States government and the State government and reported to each of them in its official reports, that its authorized capital was $1,000,000, of which $600,000 was outstanding. These representations were made by the officers of the corporation W. H. Hill Company and sworn to by them. The capital stock of the defendant W. H. Hill Company was not actually issued upon the basis of the new capital structure. The dividend of 500 per cent. was not actually paid to the stockholders, nor was the $500,000 actually paid into the treasury of the company as an addition to its working capital.

At about the time Mr. Beck, the auditor, advised the change in capital structure above referred to, he likewise installed a system of cost accounting and began in 1920 to furnish to defendant W. H. Hill Company monthly statements of the condition of the company, which, at the end of each year, were consolidated into annual statements, so the defendants W. H. Hill Company and W. H. Hill, who controlled the company, at all times knew the condition of its business.

Plaintiff, prior to the organization of the Michigan corporation, defendant herein, had represented W. H. Hill in litigation with a competitor, and, when the Michigan corporation here involved was organized, in 1907, became the owner of 40 shares of its stock. He served for many years on its board of directors and participated in its corporate meetings. Later, plaintiff's hearing became somewhat impaired, an increasing sensitiveness as to this physical hindrance to his active participation in its corporate meetings led him to suggest to defendant W. H. Hill that he be dropped from the board of

directors of the company, and this was eventually done. About the beginning of 1923, defendant W. H. Hill Company was charged in the United States district court at Detroit with a violation of the pure food law of the United States and apparently had some publicity in the public press which came to plaintiff's attention. He had long been a member of the Detroit bar, in good standing, and did not relish being connected with a corporation charged with violating the Federal statute, and resolved if possible to sell his stock therein and to get out of the corporation. Associated with plaintiff's firm in the law business in Detroit was a young man named Clifford Toohy, and plaintiff arranged with Toohy to sell his stock in the defendant company. Toohy, being somewhat inexperienced, felt he should employ a broker. In any event, he associated with himself one Gardner in attempting to sell plaintiff's stock. Either Toohy or Gardner, or both of them, approached one Clark who was also a broker in Detroit, about the sale of plaintiff's stock, requesting that Clark say nothing to anyone connected with the defendant company about their offer to sell the stock. Clark, with consummate alacrity and flagrant disregard of the fundamental principles of loyalty to those who had proffered him business, at once violated this injunction of secrecy, and laid the matter of the offer of sale of stock in the W. H. Hill Company before defendant W. H. Hill by letter. Defendant W. H. Hill at once knew there was but one block of 40 shares of stock in his company in the hands of any one, and he then and there apparently formed a design to get this stock as cheaply as possible. As early as March 13, 1923, Hill wrote to Clark:

"If you can pick that stock up at two for one at the face value of said stock, I will take it off your hands and pay you the regular commission for handling same. For that matter, George, there will be five per cent. in it for you anyway, and perhaps both ways. Whatever you say is all right will be done.

"Now I am going to explain to you why the stock would not be worth two for one at the moment. I think I will write what I started to write here on a separate sheet, so that if you desire you can show it to the principal."

It is admitted Hill did write a separate communication to Clark to be shown the principal. Plaintiff held 40 shares of stock in the original $100,000 company representing 40/1,000ths or 1/25th interest in the assets of the corporation, which was liable for its proportionate amount of the company's liabilities. It is not claimed the trade-marks and good will of the defendant W. H. Hill Company were worth any less at this time than in 1913 when defendant had been offered $500,000 therefor, or the company's surplus had shrunk below $600,000, or that the amount of its assets did not equal its current liabilities, so the statement the stock of plaintiff was not worth two for one was a clear misstatement of fact, apparently made for the purpose of being relied upon by the principal who desired to sell his stock, plaintiff in this case. The stock was worth substantially more than two for one without considering the trade-marks and good will of defendant company, and had been so treated by the stockholders, defendant company, and by defendant W. H. Hill himself, and so represented under oath to the Federal government.

Toohy and Gardner sought to obtain from defendant W. H. Hill Company the facts as to the

financial condition of the defendant company and the true value of its stock. Not being able to do this, they took up the matter of obtaining an offer on the stock with Mr. E. W. Grove of the Paris Medicine Company of St. Louis, Missouri, a competitor of the W. H. Hill Company which had had litigation with defendant Hill in the past, and Mr. Grove told defendant Hill of this offer to him of stock in the W. H. Hill Company, and Hill at once decided he would drive a better bargain. March 26, 1923, W. H. Hill telegraphed W. H. Hill Company:

"Do not have Clark see Lightner or offer more than two for one on stock. In fact, do nothing about it until you get my letter mailed today. Gardner offered stock to Mr. Grove. He got it in the neck. Now, let him sweat. Let calendar cancellations stand. See letter."

At least as early as March 23, 1923, defendant W. H. Hill was advised by the salesmanager and associate secretary of the defendant corporation that plaintiff expected to get what his stock was worth, and three days afterwards Hill telegraphed to the company to let Gardner sweat. April 23, 1923, nearly a month after defendant Hill had sent this telegram, and a month after he had written Clark seeking to demonstrate plaintiff's stock was not worth two for one, he wrote direct to the plaintiff representing that, "When I got our balance off last spring it showed that the concern had lost a little short of $100,000." Though Mr. Hill admitted on the stand the amount lost which he referred to was $51,920, he featured in this letter his pretended friendship to Mr. Lightner, that the United States government was claiming a shortage of $114,000 in the corporation's government tax, although it is now admitted that this shortage in tax was for 1916, and

Hill represented to plaintiff that if the government claim was established and insisted upon it might cost the company $200,000; and about the last thing in the letter, under an "N. B." attached thereto, defendant Hill said: "I just received letter you had sent Toohy to examine our books. You are welcome. Is it possible you think we have turned thieves?"

"No thief e'er felt the halter draw with good opinion of the law." And while Hill in his letter to plaintiff welcomed an examination of the books of the company by Toohy, representing plaintiff, Toohy and Gardner received from the defendant company no true information. Mr. Roach, the salesmanager and assistant secretary of the defendant W. H. Hill Company, was in the office of defendant in Detroit when Toohy and Gardner sought to get information as to the true condition of the defendant company. Mr. Roach testified:

"*Q.* You didn't tell Mr. Toohy or Mr. Gardner at any time that the company had been very prosperous during 1923, the fiscal year, did you?

"*A.* No.

"*Q.* Nor did Mr. Truxell, in your hearing, do so, did he?

"*A.* No, not that I recall.

"*Q.* And you know that the statement that Mr. Truxell showed to Mr. Toohy indicated a loss, didn't you?

"*A.* That was the statement ending in 1922, March 31; that did show a loss.

"*Q.* Indicated a loss, didn't it?

"*A.* Yes.

"*Q.* Now, neither you nor Mr. Truxell told Mr. Toohy that while that statement of 1922 indicated a loss, the conditions of the business during the fiscal year that was just ended had been tremendously reversed to the profitable side of the ledger?

"*A*.  No.

"*Q*.  You withheld that information?

"*A*.  Well, we didn't tell it.

"*Q*.  And you knew when he was looking for information that that would be most interesting to him, didn't you?

"*A*.  I assume it would be.  *  *  *

"*Q*.  *  *  *  The company, up to the time you talked to Toohy and Gardner, during the time you were connected with it, was tremendously successful, was it not?

"*A*.  Yes, I would say it was.

"*Q*.  That was a marked difference from the year before, wasn't it?

"*A*.  Yes.

"*Q*.  And whether you felt that it was due to your accomplishment or not, you, at any rate, were very glad that the company had prospered so much while you were connected with it, didn't you?

"*A*.  Naturally so.

"*Q*.  And it was a matter that was foremost in your mind, the prosperity of the company at that time?

"*A*.  Yes.

"*Q*.  And now, the fact of this being foremost in your mind, you did have a little pride in it, too, didn't you?

"*A*.  Naturally.

"*Q*.  You withheld that information from Mr. Toohy and Mr. Gardner, didn't you?

"*A*.  Well, if, in giving them the information they didn't ask for—

"*Q*.  I am not asking you that.  I say you did not give them that information?

"*A*.  I did not give that information, no."

April 23, 1923, Mr. Roach wrote Hill that Toohy admitted Gardner wrote to Grove for the purpose of learning if possible what he considered the valua-

tion of the stock in the Hill Company. In this letter he said:

"The sole purpose of their visit was to, if necessary, see the books and ascertain the present value of the stock. It is needless to say that their request would never have been complied with, without your personal consent."

The only statement shown Toohy and Gardner was for the fiscal year of 1921 ending March 31, 1922. Though it is admitted the monthly statements of the company's condition were then being regularly made to it by its auditor and the fiscal year of 1922 ending March 31, 1923, showed a very profitable year, it was not shown to Toohy or Gardner, nor were the facts in relation thereto communicated to plaintiff. There is no question but defendant W. H. Hill represented to Lightner, the plaintiff, the extent of the losses of the defendant W. H. Hill Company; no doubt that he wrote secret instructions to Clark, who, in violation of the terms under which he received his information from Toohy, was in Hill's employ to purchase Lightner's stock, if possible, at less than two for one; that defendant Hill sought to demonstrate in communication to Clark for Lightner's perusal the stock was not worth two for one, when, from the monthly reports made to him, Hill at that time well knew these representations were false, and he made them for no other purpose than to be relied upon by Lightner and to deceive Lightner for Hill's benefit. The true facts in relation to the condition of the W. H. Hill Company were misrepresented when stated, and in important particulars the true financial situation of the defendant W. H. Hill Company was concealed from Lightner and from Toohy and Gardner who were seeking to dispose of his stock for what it was

actually worth. Both plaintiff and Toohy and Gardner were deceived and defrauded thereby, and the
defendant W. H. Hill was thus enabled to purchase
and procure the transfer to him of the plaintiff's
stock for substantially less than its value. The
answer of the defendant admits the assets of the
defendant W. H. Hill Company in the hands of the
defendant W. H. Hill were $2,232,068.02. Plaintiff
was entitled to more than he received for his stock.
If he was entitled to 1/25th of this amount, he would
be entitled to $89,282.72 instead of $16,080, which
he received for his stock. Appellee relies upon
*Walsh* v. *Goulden,* 130 Mich. 531. That case was
commented on in *Bollstrom* v. *Duplex Power Car
Co.,* 208 Mich. 15, a case analogous to this. It is
there said:

"We think the facts in this case bring it squarely
within the rule laid down in *Strong* v. *Repide,* 213
U. S. 419 (29 Sup. Ct. 521). In that case the president of a corporation purchased stock at much less
than its par value as known to him and due to conditions unknown to the stockholders. The court
said:

" 'If it were conceded, for the purpose of the argument, that the
ordinary relations between directors and shareholders in a business
corporation are not of such a fiduciary nature as to make it the duty
of a director to disclose to a shareholder the general knowledge
which he may possess regarding the value of the shares of the company before he purchases any from a shareholder, yet there are cases
where, by reason of the special facts, such duty exists. The supreme
courts of Kansas and of Georgia have held the relationship existed
in the cases before those courts because of the special facts which
took them out of the general rule, and that under those facts the
director could not purchase from the shareholder his shares without
informing him of the facts which affected their value.'

"After a review of the facts, the court concluded:

" 'If under all these facts he purchased the stock from the plaintiff, the law would indeed be impotent if the sale could not be set
aside or the defendant cast in damages for his fraud.'

"Judge Peckham, who wrote the opinion, cites *Stewart* v. *Harris,* 69 Kan. 498 (77 Pac. 277, 66 L. R. A. 261, 105 Am. St. Rep. 178, 2 Ann. Cas. 873); *Oliver* v. *Oliver,* 118 Ga. 362 (45 S. E. 232). These cases are very instructive on the general proposition here presented."

Since this case was decided in the trial court, the trial judge, Mr. W. H. Hill, and Judge Stewart Hanley who tried the case for plaintiff, have died. Defendants Henry M. Wallace, Hugo A. Freund, and Margaret A. MacDonald are executors of the last will and testament of W. H. Hill, deceased, and are therefore substituted for him as parties defendant.

The decree of the trial court is reversed, and decree will be entered for plaintiff, and the case remanded to the trial court for an accounting and for such further proceedings as shall be necessary to carry out the terms and conditions of the decree.

CLARK, C. J., and McDONALD, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.