TRIPPETT et al. v. POLARIS IRON CO.
et al.
No. 9305.

Circuit Court of Appeals, Fifth Circuit.
March 15, 1940.
Rehearing Denied April 24, 1940.

Edward S. Klein, of Shreveport, La., and W. H. Sanford, of Dallas, Tex., for appellants.

Pike Hall, of Shreveport, La., for appellees.

Before HOLMES and McCORD, Circuit Judges, and MIZE, District Judge.

McCORD, Circuit Judge.

Polaris Iron Company brought suit against R. G. Trippett and A. H. Meadows for an accounting for profits realized by the defendants upon the sale of the assets of the Texota Corporation. Five other former owners of stock in Texota Corporation intervened in the suit and joined in the demand of Polaris Iron Company. The case was heard by the court without a jury and judgment was entered for the plaintiff and intervenors. Polaris Iron Company v. Trippett et al., D. C., 28 F. Supp. 690.

The facts are undisputed. The Texota Corporation was organized in 1931 under the laws of the State of Texas. The charter authorized issuance of 750 shares of no par value common stock divided into equal amounts of class A and class B shares. Class A stock was given the right to elect one member of the board of directors and class B stock was authorized to elect two members. The 375 shares of class A stock were issued to Polaris Iron Company and others—known as the Minnesota group. Class B stock was issued to Messrs. Wilson, Sundby, and Grininger—known as the Texas group. The first board of directors consisted of two members elected by the class B stockholders and one member elected by the class A stockholders to represent the Minnesota group. The corporation purchased an eleven acre lease (known as the Molly Fen lease) in the East Texas Oil Field, and three producing wells were drilled on the property.

In March, 1934, an attempt was made to amend the charter of the corporation so as to give all stock equal voting rights. Slightly less than seventy-five per cent of all stock voted in favor of the amendment. Thereafter Trippett and Meadows acquired 187⅔ shares of the class B stock from Wilson and Sundby. On May 15, 1934, the annual meeting of the stockholders was held. Stockholders other than Trippett and Meadows contended that the amendment gave all stock equal voice in the election of directors, and practically all stockholders other than Trippett and Meadows voted to elect Grininger, Congdon, and Garver of the Minnesota group directors of the corporation. On the same day the owners of a majority of class B stock met and, acting under the terms of the original charter, elected Trippett and Meadows directors of the corporation. These directors took over the actual physical possession and control of the assets and business of Texota Corporation.

The directors elected by the Minnesota group brought suit in the State court against Trippett and Meadows to recover possession of the company's property. The suit was dismissed and Trippett and Meadows continued in charge of the property and affairs of Texota Corporation. On October 30, 1934, at the suit of individual stockholders of the Minnesota group, the State court appointed a receiver for Texota Corporation. The receiver was not permitted to take possession of the property, an appeal with supersedeas bond having

been perfected, and Trippett and Meadows continued in control of the corporation as president and secretary.

About December 1, 1934, Trippett gave a lease broker a letter stating that they would consider selling the Molly Fen lease for $200,000. The broker contacted the Rancho Oil Company and was told that the price was too high, but that it would be "interested in the property if it could be bought for $175,000 with four wells completed on it." Deducting commissions and the cost of drilling a fourth well this amounted to a net offer of $160,000 for the property. The court found that this offer was made as early as December 15, 1934. On the basis of the $160,000 offer the stock in the corporation was worth $213.35 per share, exclusive of the accumulated cash in the treasury amounting to $20.00 per share.

On December 17, 1934, Trippett and Meadows sent a telegram to Congdon and Garver of the Minnesota group: "On September 18th you made us an offer to sell all your Texota Stock * * * We considered this price too much and we did not need the connections Stop We now need the connections and offer you and other stockholders one hundred sixty dollars per share all cash plus pro rata distribution of all funds in treasury of company amounting to approximately twenty dollars per share * * * This offer is all the the property is worth * * * we are giving you this opportunity to sell us your stock at a fair price so as to avoid further friction when we connect to the wells Stop Please wire us your decision. R. C. Trippett and A. H. Meadows."

On December 19th Congdon and Garver replied to the telegram, "* * * we think that now that you do need them (the connections) you should be willing to pay one hundred ninety-two dollars." On December 18th Rancho Oil Company agreed to pay $180,000 for the property with four completed wells—a net offer of $165,000. On December 19th Trippett and Meadows agreed to meet with the representative of Rancho Oil Company the following day to work out a trade. That same day, December 19th, Trippett and Meadows wired Congdon and Garver agreeing to buy "five hundred forty three and one third shares of Texota stock of Polaris Swan Chafee Elliott and Grininger at one hundred ninety two dollars per share less any distribution

received. * * *" The next day, December 20th, Trippett and Meadows closed the deal with Rancho Oil Company for a net price of $165,000. Appellees did not know of the negotiations or sale of the Molly Fen lease until after they had delivered their stock to the appellants.

The $165,000 received by Trippett and Meadows for the lease made the 750 shares of Texota Corporation worth $220 per share plus cash in the treasury sufficient to pay $20 additional on each share. The defendants, therefore, paid $48 per share less than the stock was actually worth the day they purchased it from the plaintiff and intervenors.

The trial court concluded that the conduct of Trippett and Meadows amounted to fraud against Polaris Iron Company and the intervenors, and ordered an accounting "for the difference between what they received for their stock and what would have been distributed to them out of the proceeds of the property and the funds on hand had defendants treated them fairly."

The appellants contend that the judgment was error for the reason that the transaction here in question was but a purchase and sale of stock between individuals dealing at arms length.

Trippett and Meadows were acting as directors and officers of Texota Corporation and were in possession of its property and affairs, and their telegram of December 17th contained misrepresentations of material facts intended to induce the plaintiffs to sell their stock at a price far below its actual value. They knew they could sell the property for $175,000 with four wells on it, and it appears that they had no intention of making the connections which they asserted they needed. Moreover, the statement that they were giving the plaintiffs an opportunity to sell at a fair price, "so as to avoid further friction when we connect to the well," was not true. There is undisputed evidence in the record that Trippett and Meadows were "known to be engaged in the production of oil in the excess of the allowable rate." Mr. Garver of the Minnesota group testified that the threat to connect the wells was the "major influence" in their decision to sell the stock to the defendants. "We felt if the wells on the Texota Lease were connected through their own pipe lines to their own refinery, and if they were producing oil in excess of the allowable, we were in no

position whatever to know what oil was produced or to receive our share of the proceeds of it."

The misstatements of the defendants and their intentional concealment of material facts clearly show their intention to reap secret personal profits at the expense of other stockholders. The finding of the trial court that their scheme was a fraud against the plaintiff and intervenors is supported by the record. The plaintiff and intervenors were entitled to the accounting. Westwood v. Continental Can Co., 5 Cir., 80 F.2d 494; Dunnett v. Arn, 10 Cir., 71 F.2d 912; Strong v. Repide, 213 U.S. 419, 29 S.Ct. 521, 53 L.Ed. 853; Lightner v. Hill Co., 258 Mich. 50, 242 N.W. 218, 84 A.L.R. 601; Fletcher's Cyc. Corp. vol. 3, Perm.Ed., secs. 848, 1168, 1117; 84 A.L.R. Annotation, page 615, sec. III, Cf. Bacon v. Soule, 19 Cal.App. 428, 126 P. 384.

The judgment is affirmed.