## MICHAUD *v.* GRACE HARBOR LUMBER CO.[1]

1. DOCKS—DEFECTIVE CONSTRUCTION—INJURY TO VESSEL—ASSUMP-
TION OF RISK..

Where it is not clear that a shipmaster's acquaintance with a dock, which he had used on prior occasions, was such that he must have known that the snubbing-post to which he tied up was not properly braced underneath, it was for the jury to say whether or not, in view of the dock-owner's directions to tie to the particular post, and his assurance that the dock was perfectly safe, he assumed the risk of injury to the vessel occasioned by the post's canting over in a storm and releasing the boat.

2. SAME—CONTRIBUTORY NEGLIGENCE OF SHIPMASTER.

It cannot be said, as a matter of law, that a shipmaster was guilty of negligence, precluding a recovery against a dock-owner for injury to a vessel caused by the giving way of a snubbing-post improperly braced, although the post gave indications of giving way two hours before the accident, where the master testifies that it was dark and stormy at the time, that all the lines were out, and that he was unable to get to them after dark.

3. DAMAGES—EVIDENCE OF VALUE—WITNESSES.

In an action to recover for injuries to a vessel, it was proper, on the question of damages, to show her value before and after the injury; her owner, who had owned other vessels also, being competent to express an opinion as to her original value; but the speculations of persons who had not examined her, as to whether it would be possible to tell the extent of her injuries, were properly excluded..

4. SAME—NONJOINDER OF PLAINTIFFS.

The nonjoinder of a plaintiff in an action of tort, unless pleaded in abatement, can be taken advantage of by defendant only by way of restricting the plaintiff's recovery to his apportionable share of the damages.

Error to Wayne; Waite, J.   Submitted October 27, 1899.   Decided December 12, 1899.

[1] Rehearing denied January 23, 1900

122 MICH.—20.

Case by Theophilus Michaud against the Grace Harbor Lumber Company for maintaining a defective dock. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Wilkinson, Post & Oxtoby* and *Walter E. Oxtoby*, for appellant.

*Warner, Codd & Warner*, for appellee.

MONTGOMERY, J. The plaintiff is a half owner of the schooner "John Jewett." The defendant is a corporation doing business at Hammond's Bay, Presque Isle county. In October, 1898, the defendant, through its officers, chartered the vessel to go to the defendant's dock at Hammond's Bay, and take on a load of lumber to be transported to Detroit. The vessel was sent in charge of her master, Capt. Stone, and arrived at the defendant's dock on Sunday, the 16th of October. In the evening of the following day she broke from her mooring, and was driven ashore. This action is brought to recover for damages sustained, the plaintiff's claim being that the dock was improperly constructed, in that the "snubbing-posts" were not braced, that the piles under the dock were not braced, and that the flooring of the dock surrounding the snubbing-posts was constructed of short pieces of plank, laid independently of the main flooring of the dock; that by reason of these defects the dock was not a safe place to moor; that the snubbing-post to which the main line was fastened canted over, allowing the line to slip from it; and that this was the cause of the wreck. The defendant contends that the master of the vessel knew all about the dock, having been there and having made use of it on other occasions, and assumed whatever risk there was; that the master was at fault in the manner in which he made fast the vessel, and that the dock was reasonably safe; that the loss was more properly attributable to excessive high wind than to any fault of the defendant's dock. The learned circuit judge was of the opinion that no case

had been made entitling plaintiff to take the judgment of the jury, and directed a verdict for the defendant. The grounds upon which this action was taken were stated by the circuit judge as follows:

"The Grace Harbor Lumber Company constructed the dock apparently for its own use. It would be responsible, I think, for any damages which might occur to those who tied up to the dock relying upon their representations absolutely; but under the circumstances of this case, and from the facts in this case, it appears to me that the master of the vessel was fully cognizant of all the risks taken, except, perchance, the one risk which would be attendant upon the giving way or the moving of this particular spile at the southeast corner of the dock. It is claimed here by the plaintiff that the loss was occasioned by the moving of this spile,— by its canting over, and allowing the bights of the rope to slip off. There is the principal center of interest in this case. It all hinges upon the responsibility resting upon both parties as to that spile. There were other spiles about and in the dock. About 9 o'clock, as I remember the testimony, this spile began to move, and it tore up the planking. This was known to the master of the vessel, and, of course, what was known to him in this case was known to the owner, the plaintiff. For two hours or a little over that was swaying and moving, and finally, after two hours or a little more, these bights slipped off. In the meantime nothing had been done to insure the safety of this vessel. The wind was blowing at about 30 miles an hour or more. The vessel was pitching. The dock still remained after the vessel broke away. I do not think the plaintiff could recover in this case, not having done any more, after having received notice of the giving way of this spile, not having done any more than the testimony shows he did do. I do not think he is in a position to recover in this case, because, in my judgment, he was guilty of contributory negligence, or, rather, did not use that ordinary prudent care which a master of a vessel should, under the circumstances, to preserve the property."

The question for our determination is, therefore, whether there was any testimony legitimately tending to establish the theory of the plaintiff.

It appeared by the testimony of Capt. Stone that he

had on several prior occasions loaded at this dock; that before the Jewett was chartered he had a conversation with Mr. Begle, an officer of defendant, in which he said to Mr. Begle that the dock was not safe to go to. Mr. Begle replied that the harbor was safe enough to stay at all winter; that the dock was all right; that there need be no fear of the dock. Mr. Begle said: "The dock is strong enough to tear your vessel to pieces." The witness further testified that Begle told him on Monday that the post at the middle of the southeast end of the dock was not safe to hold to, but that the outside spile or post near the southeast corner of the dock was sufficient to hold the vessel. This latter was the post to which the vessel was made fast. Another line was also carried from another part of the vessel, and made fast at a point farther towards the shore, on the dock, and another at a so-called "derrick pile" or "crane" in the middle of the dock. Between 11 and 12 o'clock Monday night, the snubbing-post at the southeast corner of the dock canted over, and the lines slipped off, so that a single line held on that snubbing-post, and it parted. The manner in which this line was fastened to this snubbing-post was by first taking a turn with the rope at the post; then two half hitches in the rope, thus making it fast to the post; the line was then taken aboard the vessel, and a turn taken around one of the forward timber-heads; then the line led back to the snubbing-post, where they took a "bight," so called; then led back to the vessel, where a single turn was taken around the other forward-port timber-head; then the line was taken back to the snubbing-post, and another bight taken in the line; and so on, until there were five strands of this three-inch line running from the vessel to the snubbing-post. A "bight" is described as a single turn around the snubbing-post. These bights were placed at about the hitch or place where the line was fastened to the post. It is claimed by the defendant that this method of fastening the vessel was an improper one, and brought an unnecessary strain upon the snubbing-post.

Capt. Boston was called as a witness by the plaintiff to show the improper construction of the dock. On cross-examination he was asked about the propriety of the method adopted in making the line fast, and replied that, if he had been making it fast, he would have made the last turn with a lasso hitch, and gave further testimony indicating that good seamanship would require that method. If this testimony were not contradicted, it might be urged with much force that it establishes conclusively that the negligence of the shipmaster, to say the least, contributed to the result; but Capt. Baker testifies that the method employed was proper, as do Capt. Stone and the mate of the vessel. This question was therefore one for the jury.

We are also of the opinion that the question of assumed risk was for the jury. There was testimony tending to show that the snubbing-post which gave way was not properly braced underneath. We are not able to say that the acquaintance of Capt. Stone with the dock was such that he must have known of this defect, particularly in view of the testimony tending to show that Mr. Begle had assured him of the safety of the dock. If his previous knowledge was not such that he must be held to have known of the defect in question, the assurances given him by Mr. Begle are to be taken into account in determining whether he assumed a risk which he ought to have known the extent of. *Lake Superior Iron Co.* v. *Erickson*, 39 Mich. 492 (33 Am. Rep. 423); *Burnside* v. *Manufacturing Co.*, 121 Mich. 115.

Was the captain guilty of contributory negligence in failing to do all that he could to avoid disaster after the dock began to give way, and after the snubbing-post began to cant over? The circuit judge was of the opinion that he was guilty of such negligence, and appears to have determined the case on that point. We think the question was a proper one for the jury. All the lines were out, and Capt. Stone testifies that he could not get to the lines after dark on Monday. The case is evidently near the line, but we think, as the evidence stood, it was a case for the jury.

As bearing on the question of damages, we think it was competent, if the plaintiff was able to do so by competent witnesses, to show the value of the vessel before the injury, and her value as she was afterwards. We think, however, the court was right in excluding speculation, by any who had made no inspection of the vessel, as to whether it would be possible to tell what the extent of the injuries to her was. The value should be shown by one who knew enough of her condition to speak upon the subject. We think the plaintiff, who owned this vessel and has owned others, showed himself competent to express an opinion as to the value before the damage. *Erickson* v. *Drazkowski*, 94 Mich. 551.

The point made by the defendant that there is a nonjoinder of a necessary plaintiff, and that the plaintiff should not recover for this reason,.is without merit. No plea in abatement was filed. In this state of the pleading, the most that the defendant can insist on is that the plaintiff be restricted in his recovery to the damages which he has sustained. 1 Am. & Eng. Enc. Pl. & Prac. 15; . *Achey* v. *Hull*, 7 Mich. 423.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.