ANDRIES *v.* EVERITT-METZGER-FLANDERS CO.

1. DAMAGES — AUTOMOBILES — INJURY — MOTOR VEHICLES — EVIDENCE — VALUE OF USE.

Plaintiff, who claimed that defendant damaged his car by running into it, was correctly allowed to testify what the value of the use of the car amounted to during the time that he was deprived of it.

2. ADMISSIONS — APPEAL AND ERROR — CURING ERROR.

There was no reversible error for admitting evidence of admissions made by the officer of a corporation when he

testified, as a witness, to the facts claimed to have been admitted on the trial of an action for damages to plaintiff's automobile.

3. AUTOMOBILES—NEGLIGENCE.
Evidence considered, and *held*, to present a question of fact relative to defendant's negligence in colliding with plaintiff's motor car.

4. SAME—CARE REQUIRED—TRIAL—REQUESTS TO CHARGE.
Defendant's requests to ˙ charge the jury were not improperly denied when the court fully covered the same subjects in different language.

Error to Wayne; Murphy, J. Submitted June 9, 1913. (Docket No. 47.) Decided September 30, 1913. Rehearing denied January 5, 1914.

Case by Joseph H. Andries against the Everitt-Metzger-Flanders Company for damages to plaintiff's automobile. Judgment for plaintiff. Defendant brings error. Affirmed.

*Denton Guinness,* for appellant.

*George B. Greening,* for appellee.

MOORE, J. This suit grew out of. an automobile accident. It was started in justice's court, and appealed to the circuit court. From a judgment in favor of the plaintiff for $450, the case is brought here by writ of error.

The plaintiff is a doctor. It is his claim that while he was driving his runabout north on Brush street, across Medbury avenue, at the rate of eight or ten miles an hour, the driver of one of defendant's automobiles came out of Medbury avenue at a rate of speed not less than 30 or 35 miles an hour, and came into collision with his car.

"I drove along until I got near to the little court shrubbery on Medbury avenue, and just passing that I saw this car about 15 or 20 feet from me. I was helpless, and this man bore down on me and struck

my car almost at the center.   His car picked mine right off the ground, and carried it from where I was, on the right-hand side of Brush, to the left side of Brush, on the corner, and threw the car around on the curbstone sidewalk.   His car, after hitting mine, swung around completely, and also ran to the corner of Brush and Medbury, that is, on the northwest corner, and then, after he struck my car, you could see that about 15 feet before  he hit me  he put on his emergency brake, or rather a brake, and  his  car skidded for about 15 or 20 feet, and after skidding, and his car hitting my car, it carried it about 30 feet across the street with such violence that you could not see where my tires or wheels had skidded on the street; it picked it up in the air without skidding at all.   *   *   *   I say he picked my car up and carried it from the right-hand side of Brush street clear across and threw it on the curb on the left-hand corner, and I was in the car all this time.   I was stunned."

He testified that he  sustained  a  nervous  shock; that it cost him $249.59 for repairs to his automobile; that during the time his machine was being repaired he was compelled to hire other vehicles and transportation to go about.

"*Q.* What would be your reasonable charge for the loss of the use of that car during that time and the expense you were put to?

"*A.* I would value the use of the car at about $5 a day.

"*Mr. Guinness:* I object to it, and move to strike it out.

"*The Court:* It may stand.   Exception for defendant.

"I suffered a nervous shock for quite a while afterwards.   For a few days, probably a week, I was not able to attend to my regular business, and was compelled to have somebody at my business.

"*Q.* How much did you actually lose in dollars and cents for loss of business while you were laid up, loss of time and services?

"*Mr. Guinness:* I object to that as not specified in the declaration.

"*Q.* Did you suffer any pain or annoyance your-self?

"*A.* I had a headache for a few days from the blow I received.

"*Mr. Greening:* I call your honor's attention to the bottom of the third page, that he has been deprived of his earnings as a physician during the time he was so injured, etc. I figured the actual loss would be about $250. That would be far in excess of what I claim in this case. I am willing to waive the excess of the damage I claim in this case. The total, $249.59, and $175 for the use of the car, and $250 for the personal injuries, would bring it up over $500, and I waive all the excess above the $500."

The driver of the car told a different story, though he admitted his car was going 15 or 20 miles an hour.

Counsel argue their case under the following heads:

(1) Errors in testimony during trial.

(2) The court should have directed a verdict for defendant, either when plaintiff rested, or when both sides rested.

(3) Errors in court's charge, refusal to give requests to charge, and argument of counsel.

(4) Motion for new trial.

We take up the case in the order pursued by counsel.

1. It is said the court erred in allowing the value of the use of the car. It will be noticed no reason was given for the objection to this testimony; but even if one had been given the testimony was competent.

The following is said to be reversible error:

"*Q.* Did Mr. Spencer, in the presence of the driver, tell you he was going about 25 or 30 miles an hour?
*    *    *

"*A.* They took Mr. Funke aside, and I heard them say, 'You certainly must have hit him an awful smash.' "

The record shows Mr. Spencer was assistant secretary of the defendant, and arrived on the scene

while the parties were all there, and while the automobiles were in the positions left by the collision. Mr. Spencer was called as a witness by the defendant. On cross-examination he testified in part as follows:

"*Q.* Didn't you state in the presence of the doctor and his brother that he must have got an awful bump, that your driver must have hit him an awful bump?

"*A.* I told you I stated that the day the accident occurred; I don't remember the other man being there.

"*Q.* You stated to him your driver must have given him an awful bump?

"*A.* Yes, it must have been an awful bump."

If there was any error in the first instance, it was harmless error, in view of the fact that Mr. Spencer testified to the same thing.

2. Did the court err in declining to direct a verdict for defendant? In view of the doctor's testimony, which we have quoted, it would have been error to direct a verdict for defendant, as the plaintiff's testimony made a question for the jury.

3. Did the court err in his charge and in his failure to give defendant's requests? We quote one of these requests:

"If you find that plaintiff could have seen defendant's machine coming in time to have avoided a collision, either by turning to the left or stopping or in any other way, your verdict should be for the defendant."

The court gave a long general charge, and told the jury repeatedly what was the duty of the respective drivers. We quote:

"Examining a little more specifically the duty resting upon the plaintiff, it was his duty, in driving his automobile, to have regard for the fact that Medbury avenue was open for traffic, and it was his duty to do what a reasonably cautious man, a man of average prudence, would do under like circumstances.

Indeed, gentlemen of the jury, in testing the conduct both of the plaintiff and of the defendant's driver, Funke, to determine whether either of them was guilty of any negligence, this is the test furnished you by the law for determining that fact: Each of them, both the plaintiff and Funke, was expected to do, as he drove his automobile, what a man of average prudence, what a man of ordinary caution, would do under like circumstances. Thus, gentlemen of the jury, not the highest degree of care and caution was exacted of them; but as the doctor, the plaintiff, drove his automobile north on Brush street, and as Funke drove his car west on Medbury, each of them was expected, under the law, to do what, under the then existing conditions, a man of average ordinary caution and prudence would do. Now, if either of them failed in that respect, such failure would be negligence. It is for you to say, then, gentlemen of the jury, keeping in mind the conditions as they existed that day, with reference to the light, with reference to the opportunity for seeing or not seeing the approach of a car, keeping in mind all the circumstances as they are established by this evidence here —it is for you to say whether the doctor, whether Funke, each operated his car as a man of average, ordinary prudence would do under like conditions. If you find that the doctor did, and that Funke did not, and that Funke's failure resulted in injuries to the plaintiff, that would entitle the plaintiff to recover. If you find that the doctor did not operate his car under the then conditions as a reasonable man of ordinary prudence would have done, then the doctor could not recover. Likewise, if the driver, Funke, operated his car as a man of ordinary caution would do, under the conditions then existing, then the defendant would not be liable.

"To make out the plaintiff's right to recover then, gentlemen, upon this phase of the case, it must be shown by the evidence that the plaintiff operated his car with that degree of caution which an ordinary man would exercise under like conditions, and that Funke did not do so, resulting in the plaintiff's injuries, and if that is your finding, the plaintiff is entitled to recover."

We think this fully covered the law of the case. The other assignments of error have been examined; but we deem it unnecessary to discuss them.

The judgment is affirmed.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.