### HERPOLSHEIMER *v.* MICHIGAN TRUST CO.

1. EVIDENCE—JUDICIAL NOTICE.

It is matter of common knowledge that holdings in common-law trust doing large merchandising business at best are of uncertain market value.

2. TRUSTS—BREACH OF DUTY—FIDUCIARY RELATION—EQUITY.

Where holder of shares in common-law trust conducting large merchandising business was man of mature years and normal business judgment and knew all facts bearing on advisability of selling his shares to his mother and brother and dealt with them at arm's length, he is not entitled, seven years later, to maintain suit against them and trustee operating business, on theory that they, while acting as trustees, had defrauded him because he sold for par value of $100 per share when book value was $148.99, and seven years later shares sold for $196 per share; record disclosing that defendants owed no duty that they did not perform, and therefore there was no breach of duty incident to fiduciary relation.

3. SAME—EQUITY.

Where beneficiary was willing party to acts of trustees under his father's will, and participated in benefits from said acts, equity will not grant him relief seven years later even though trust was not carried out literally in accordance with terms of will.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 28, 1932. (Docket No. 1, Calendar No. 36,588.) Decided January 3, 1933. Submitted on rehearing April 1, 1933. Decided May 16, 1933. Rehearing denied August 29, 1933.

Bill by Heinrich W. G. Herpolsheimer against Michigan Trust Company and others for an accounting of trust funds. Bill dismissed. Plaintiff appeals. Affirmed on rehearing.

*Fred P. Geib* (*Richard C. Goodspeed,* of counsel), for plaintiff.

*Travis, Merrick, Johnson & McCobb,* for defendant Michigan Trust Company.

*Willard F. Keeney* and *Knappen, Uhl, Bryant & Snow,* for defendants Caroline K. Herpolsheimer and Estate of Arthur B. Herpolsheimer.

NORTH, J. Plaintiff, as beneficiary under a testamentary trust created by his father's will, seeks an accounting from the trustees of profits alleged to have been made incident to the purchase of plaintiff's share by his brother, Arthur, at less than its fair value and its subsequent sale at a higher price. The theory of plaintiff's bill of complaint is that the defendants unlawfully deprived him of this profit while serving as trustees. The bill of complaint was dismissed, and plaintiff has appealed. The facts are voluminous and somewhat involved.

Plaintiff's father, Henry B. Herpolsheimer, died testate June 5, 1920. He was survived by his widow, Caroline K. Herpolsheimer, and their three children, Heinrich W. G., Arthur, and Caroline B. Herpolsheimer. By his will deceased left the bulk of his estate in trust to the Michigan Trust Company and to the widow Caroline K. Herpolsheimer, and in so

doing he sought to accomplish three purposes: First, to keep such portion of the estate as was necessary invested in the Herpolsheimer Company that the same might be operated for such period as the trustees deemed advisable and until they could dispose of or liquidate the interest of the testator. Second, to pay certain specified legacies to the widow and children respectively. And third, to create an $80,000 trust fund to be invested in good interest-bearing securities, one-third of the income payable to the widow and the remaining two-thirds to be divided equally among the three children, with provision for final disposition of this fund upon the death of the surviving member of his family.

Deceased owned 4,027¾ out of a total of 10,000 shares in the Herpolsheimer Company, a common-law trust, which conducted a large and successful merchandising business in the city of Grand Rapids, Michigan. Throughout this record these shares are referred to as being of the par value of $100. Deceased's interest in the company was appraised at the par value of $402,775. The entire estate was appraised at $750,020.01. The trust company and widow acted as the executors of the estate and in due course took over the property and assumed the duties incident to the execution of the testamentary trust.

Prior to his death, Henry B. Herpolsheimer was the dominating factor in the management and control of the common-law trust under which the Herpolsheimer Company conducted its business. It was a family enterprise, and apparently amicably conducted without very rigid adherence to formality or regularity in the matter of electing trustees, officers, etc. The deceased, his father, and brother were the three trustees operating the common-law

trust. The death of all three occurred in a comparatively short period, thus leaving the trust without surviving trustees. Four days after the death of plaintiff's father, the shareholders of the Herpolsheimer Company held a meeting at which trustees and officers were elected. The widow was chosen president; Mr. Oltman, who for many years had been in the company's employ, was chosen secretary; plaintiff, who was not present at the meeting, was made assistant secretary; and Mr. Yeakey, another long-time employee of the company, was elected treasurer. For a number of years plaintiff had been in the employ of the Herpolsheimer Company but without being intrusted with any large degree of authority or responsibility. At the time of his father's death, plaintiff was 28 years of age, Arthur was 19, and the sister, Caroline B., was 15. Immediately following the death of Henry B. Herpolsheimer, discord developed in the management of the Herpolsheimer business. Mr. Oltman, because of differences with plaintiff, tendered his resignation, but was dissuaded by others interested in the company. It is apparent that plaintiff felt that his share in the management was unduly restricted. He continued in the company's employ until his dismissal January 4, 1922; but in his testimony and brief he complains that he was not intrusted with any responsibility and was ignored and shunned by his mother, brother, and others associated in the business. In this connection, it may be noted that Mr. Oltman had been appointed general manager of the business, and the brother, Arthur, was made assistant to Mrs. Herpolsheimer, who was serving as president of the company.

In the settlement of his father's estate, plaintiff received in lieu of a specific legacy 445 shares in the

Herpolsheimer Company. His interest in the company by reason of the testamentary trust amounted to 179½ shares; and in the settlement of his grandfather's estate he had received 83 1/3 shares, totaling 707 5/6 shares. As noted above, plaintiff was dismissed as an employee of the Herpolsheimer Company on January 4, 1922. On January 25, 1922, plaintiff's mother by letter advised him:

"Upon surrender of certificates aggregating the above mentioned stock (707-5/6 shares) you will be paid the sum of $70,783.33 in cash.

"If this is agreeable, you will kindly approve."

This offer was presented to plaintiff through the Michigan Trust Company. He indorsed his acceptance thereon January 28, 1922, and the transaction was subsequently closed. Notwithstanding the above offer to purchase came from plaintiff's mother, the stock seems to have been purchased by the brother, Arthur.

December 21, 1923, nearly two years after this stock transaction, the Herpolsheimer Company was incorporated, 10,000 shares of stock of the par value of $100 per share. The business was successfully carried on by the corporation until January 19, 1929, when it was sold to the Hahn Department Stores at a price of $196 per share, subject, however, to guaranteeing payment of certain accounts. Plaintiff, considering himself aggrieved by defendants' refusal to account to him for the profit made incident to the sale of the Herpolsheimer business over and above the price paid to him for his stock substantially seven years before, filed this bill for an accounting. Since filing the bill of complaint, and on September 19, 1930, Arthur B. Herpolsheimer died. The Michigan Trust Company, as executor of his estate, has appeared and defends in his stead.

For the purpose of decision herein, we accept plaintiff's contention that at the time he sold his stock defendants sustained a trust relation to him, and in their dealings with him incident to the subject-matter of the trust, the defendants have the burden of showing good faith and fairness. And further:

"A trustee is bound to fidelity in the interests of his trust, and will not be permitted to make profit by the relationship. * * * The purchase of property by a trustee from his *cestui que trust* is voidable and not void in the strict sense of the term, but such purchases will not be sustained by courts of equity unless, after the most rigorous scrutiny, it clearly appears that there is no fraud or concealment in the transaction, and no advantage taken by the trustee of information obtained by him in that capacity." 26 R. C. L. p. 1375.

"A trustee is not allowed to deal with the *cestui que trust* as with a third person, and purchases of trust property made by him, will not be sustained, unless the court is satisfied that he has acted throughout with the most perfect fairness, and taken no advantage of his peculiar relation." *Schwarz* v. *Wendell* (syllabus), Walk. Ch. 267.

It is plaintiff's claim that the trustees kept from him the information which would have disclosed the true value of his shares in the Herpolsheimer Company at the time he sold them; and by so doing he was induced to sell his holdings at par when the book value disclosed by the company's records was $148.99 per share. Plaintiff's claim as presented in his brief is:

"The purchase of his shares in Herpolsheimer Company by Arthur B. Herpolsheimer and Caroline K. Herpolsheimer is null and void because at the

time of the purchase both purchasers were trustees for his (and others) use and benefit, and equity will not permit such trustees to become purchasers of their *cestui* interest, for to do so creates a conflict between duty and interest which equity will not tolerate.   *   *   *

"By reason of Arthur B. Herpolsheimer and Caroline K. Herpolsheimer becoming purchasers of plaintiff's interest in Herpolsheimer Company, with the active aid of the Michigan Trust Company, plaintiff was wrongfully deprived of the protection, both of the trust in subdivision (a) paragraph four of his father's will, and of the common-law trust, paragraph five of section two of the declaration of trust."

At the time plaintiff disposed of his holdings in the Herpolsheimer Company he was approximately 30 years of age. He was a man of affairs. At his marriage he had received $10,000 from his father. He had been in the employ of the Herpolsheimer Company substantially eight years. While his authority may have been somewhat circumscribed, at least to some extent he had been associated with his father in the management of this large mercantile business. It is not claimed that prior to the father's death Mrs. Herpolsheimer or the brother, Arthur, took any active part in the conduct of this business. As before noted, Arthur was only 19 years of age at the time his father died. While the transaction by which plaintiff disposed of his interest for more than $70,000 was handled through the Michigan Trust Company, no claim is made that it profited secretly or otherwise. Nor is there any testimony that the trust company or any of its officers or agents were engaged in an effort to enable other members of plaintiff's family to profit at his expense. Practically all, if not all, of plaintiff's dealings relating

to the subject-matter of this suit were carried on through Mr. Schouten, vice-president of the Michigan Trust Company. The burden of plaintiff's complaint is that he did not know, and was not informed either by Mr. Schouten or plaintiff's mother or his brother, of the actual value of his holdings in the Herpolsheimer Company at the time he sold his interest therein. Their duty to so advise plaintiff is based on the fact that the trust company and Mrs. Herpolsheimer were trustees of the testamentary trust, and Mrs. Herpolsheimer and Arthur trustees of the common-law trust. Plaintiff makes no claim of misrepresentation to him by either his mother or brother; and he knew that he was selling his holdings to one or the other, or to both of these trustees. While to some extent it may be contradicted by plaintiff's testimony, we are satisfied that Mr. Schouten did not represent to plaintiff that selling on the basis of Mrs. Herpolsheimer's offer would be financially advantageous to plaintiff. Mr. Schouten neither knew nor pretended to know the value of plaintiff's holdings in the Herpolsheimer Company. As noted above, the trust company had no financial interest in this transaction. But aside from the foregoing considerations, if plaintiff at the time had knowledge of all the material facts possessed by the defendants which had a bearing upon the advisability of the sale of his interest, he cannot complain, especially at this late date.

Plaintiff's claim that he did not know of the prosperous condition of the Herpolsheimer Company cannot be given credence. His specific complaint is that he did not know it appeared from the records of the company that its stock had a book value of $148.99 at the time he wrote his acceptance of his mother's offer to pay him par value for his holdings.

The preponderance of the testimony is very much to the contrary. The company's books for years had disclosed a similar financial condition. While the testimony discloses a policy of secrecy as to the general public touching the financial affairs of the Herpolsheimer Company, there is no showing of such hostility or secrecy during the years that plaintiff was associated with his father in the company's business as would lend credence to plaintiff's claim that he was not fully advised of the contents of the company's records. He had an office near that occupied by his father in his lifetime. It was near the office of Mr. Yeakey, the treasurer, and the office of Miss Barr, the assistant treasurer, where the company's books were kept. Mr. Yeakey testified that plaintiff had access to these offices and that witness never refused to give plaintiff any financial statements of the company. Plaintiff attended the company's annual stockholders' meeting in January, 1922. At that time he held in his own right from his grandfather's estate 83-1/3 shares in the company. The annual report for the year 1921 was presented and disclosed a capital stock of $1,000,000, a surplus of $489,906.18, and a net profit for the year 1921 of $105,708.09. It was immediately following this stockholders' meeting that plaintiff received the written proposition of his mother, considered it, had a copy made of it, and then wrote his acceptance of the offer and returned it to the trust company. We forego review of other phases of the testimony which sustains the conclusion that, acting on his own judgment, and with full knowledge, plaintiff, because he was dissatisfied with his connection with the company's business, and because he lacked confidence in those in charge of the business, decided to dispose of his interest therein. A disinterested witness tes-

tified that substantially at the time plaintiff's connection with the business was terminated, plaintiff stated to witness "that he had been asked to resign, and he in turn had asked them to purchase his stock." As to his relations to and lack of confidence in the company's management, plaintiff testified:

"I was not speaking to Mr. Oltman at that time. I did not have great confidence in the management of the business by Mr. Oltman, and Mr. Yeakey and my brother Arthur. *  *  *

"Q. But for managing the business, you did not approve of each one of them?

"A. I said so, and I say so today."

Several times plaintiff had spoken to Mr. Schouten about the trust company taking over the management of the company's affairs; but on the date plaintiff accepted his mother's offer Mr. Schouten told him "they were perfectly satisfied with the people they had running the store." In this connection plaintiff testified that "For quite a long while *  *  * (he) had been dissatisfied with the men who were running the business." From the foregoing and other portions of the record, we think it clearly appears that plaintiff acted on his own judgment and with full knowledge of the material facts in disposing of his interest in the Herpolsheimer Company.

We are not greatly impressed with the assumption of appellant that, because on the face of the company's records its stock had a book value of $148.99, therefore its market value must have been at that time much in excess of the amount he received. Book value is one thing, but market value quite another. The Herpolsheimer Company was not an open corporation whose shares were of an established market value. Instead, it was a family enter-

prise carried on as a common-law trust. Inherently
it possessed all the hazards of a large merchandising
business. Those who had made it a success had been
removed by death; the new management had not
demonstrated its ability to .carry on, and in plain-
tiff's own judgment the new management was in-
competent. As pointed out in appellant's brief:
''The organization was a close family affair in which
a minority stockholder would be all but helpless.''
It is a matter of common knowledge that holdings
of this type at best are of uncertain market value.
Plaintiff does not make the claim that he could have
disposed of his interest in the company in 1922 for
a larger sum than he received. On this record, it
must be held that the $70,783.33 which he received
was at least full and fair consideration. In arriving
at this conclusion, we have not overlooked the sale
seven years later at $196 per share of the then cor-
poration's stock of a par value of $100. At that
time the success of the incorporated business had
been demonstrated. The space occupied had been
materially enlarged. When plaintiff disposed of his
interest (January, 1922) the company's books dis-
closed an accumulated surplus of $489,906.18; but
by the end of 1927 the surplus had been increased
to $986,188.74. Further, the sale to the Hahn De-
partment Stores was consummated at the flood tide
of prosperity. These and other circumstances dis-
closed by the record account for the sale at a higher
price in January, 1929; but they are not matters
which in any way tend to establish a breach of
fiduciary duty on the part of any of the defendants.

The only conclusion justified by this record is that
plaintiff, a man of mature years and normal busi-
ness judgment, knowing of material facts bearing

upon the advisability of the transaction, determined he would dispose of his interest in the Herpolsheimer Company. He knew the purchase was by one or more of the persons who were then serving as trustees, and, knowing of their adverse interest, he dealt with them at arm's length. The record discloses that the trustees owed plaintiff no duty that was not fully performed; and he is not entitled to any relief based upon an alleged breach of duty incident to the fiduciary relation of any of the defendants.

And plaintiff is not entitled to relief on the ground that the distribution of the trust estate was not literally in accord with the terms of Mr. Herpolsheimer's will. Plaintiff was a knowing and willing party to the acts of the trustees of which he would now complain. He received and retained his distributive share of the estate thus obtained. He is not now tendering restitution. Years have intervened. If a wrong was committed, appellant was a willing and beneficial participant. On that account, equity will not grant him relief, even though the trust was not carried out literally in accordance with the terms of the will.

The decree entered in the circuit court dismissing plaintiff's bill of complaint is affirmed, with costs to appellees.

McDonald, C. J., and Clark, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.

### On Rehearing.

Per Curiam. Careful consideration of appellant's voluminous brief filed on rehearing reveals no reason for modifying or amplifying our former opinion herein. Appellees will have costs on rehearing.