BACKUS *v.* KIRSCH.

1. EQUITY—FRAUD—CONCURRENT JURISDICTION—ADEQUATE REMEDY
   AT LAW.
   Courts of law and of equity have concurrent jurisdiction in
   cases involving fraud, but equity court will not entertain
   jurisdiction if suitor can obtain adequate redress for wrong
   complained of in action at law.

2. SAME—RESCISSION.
   Bill by stockholders charging fraud in sale of their corporate
   stock, to president of corporation, and praying that sale be
   annulled and that stock be restored to them states case for
   rescission.

3. SAME—JURISDICTION—MONEY DAMAGES.
   Where, at time suit for rescission of sale of corporate stock on
   ground of fraud was commenced defendant still owned stock
   involved, but afterwards he transferred it, rendering restora-
   tion impossible, court of equity had jurisdiction to award
   money damages.

4. FRAUD—FIDUCIARY RELATIONS—DUTY TO IMPART MATERIAL
   FACTS.
   Where president of corporation dominated and controlled its
   business, stockholders had confidence in his business ability
   and integrity, and he had knowledge of material matters not
   known to them, he stood in fiduciary relation to them, and,
   when dealing for purchase of their stock, was bound to impart
   to them any knowledge he had of facts affecting its value.

5. SAME—WITHHOLDING MATERIAL FACTS—RESCISSION.
   In stockholders' suit to annul sale of their corporate stock to
   president of corporation, on ground of fraud, evidence *held*,
   sufficient to show that defendant withheld information affect-
   ing value of said stock which he was bound to impart and
   that he made material representations which do not accord with
   facts, entitling plaintiffs to rescission.

6. SAME—DAMAGES.

> Where defendant was guilty of fraud in inducing plaintiffs to sell their corporate stock to him for $20 per share when its real value was actually much more, decree of court below awarding damages in lieu of restoration, which was impossible, and fixing actual value of stock at time sold at $32 per share, is modified, on appeal, and value fixed at $30.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted June 15, 1933. (Docket No. 51, Calendar No. 37,256.) Decided August 29, 1933.

Separate bills by Henry N. Backus and Ada T. Backus against Charles W. Kirsch for rescission of the sale of corporate stock and for an accounting. Upon death of plaintiff Ada T. Backus, Henry N. Backus, executor of her will, was substituted as plaintiff. Cases consolidated for trial. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*Lucking, Van Auken & Sprague,* for plaintiffs.

*J. Paul Wait (Harry C. Howard,* of counsel), for defendant.

McDONALD, C. J. The Kirsch Manufacturing Company was engaged in the business of manufacturing drapery hardware at Sturgis, Michigan. The plaintiff, Henry Backus, owned 1,000 shares of its common stock. His wife, Ada T. Backus, owned 845 shares. In June, 1928, they sold their stock to defendant, Charles W. Kirsch, president of the company, at $20 a share, for which they were fully paid in cash. In December, 1928, they brought separate suits in equity for rescission of the sale on the ground of fraud. The suits were consolidated and tried together in the circuit court of Wayne county. The trial court found fraud as alleged by the plain-

.tiffs, but as the defendant had sold the stock and restoration was impossible, a decree was entered in favor of the plaintiffs for money damages. The defendant has appealed, and asks reversal on the ground that no fraud was shown, that no damages were proven, that at the time of sale the stock was worth no more than defendant paid, and that the equity court had no jurisdiction to entertain the cause, because the only relief obtainable was for money damages.

1. Did the court have jurisdiction? Courts of law and of equity have concurrent jurisdiction in cases involving fraud; but the equity court will turn a deaf ear to a suitor who can obtain adequate redress for the wrong complained of in an action at law. It is only when equity powers are necessary to obtain the relief sought that a court of equity will entertain jurisdiction. The bill in this case alleges ground for equity jurisdiction. It charges fraud in the sale, prays that it be annulled and the stock be restored to them. It states a case for rescission. They asked for restoration, and that could only be obtained by a suit in equity. But restoration became impossible by the action of the defendant in transferring the stock to a third party after commencement of the suit. No argument is necessary to demonstrate a fact so plain that the defendant could not thus oust the court of jurisdiction. But the defendant claims that restoration was impossible at the time the suit was commenced because he had surrendered the stock and had it reissued to him with other shares; that it had lost its identity as Backus stock and could not be restored, and that, therefore, the plaintiffs' only remedy was in an action at law for damages. To sustain this contention he cites *Gray* v. *Trick*, 243 Mich. 388. In that case

stock fraudulently obtained from the plaintiff had been sold by the defendant to a third party and the plaintiff sought to have it replaced with other stock of the same class and character. It is plain that he was not entitled to stock which he never owned and which was not the subject of the sale, so the court confined his relief to money damages. In the instant case the defendant did not sell the stock before the suits against him were commenced. He merely changed the certificates. He still owned the stock and could have restored it. So in the beginning the court of equity had jurisdiction and could retain it for the purpose of assessing damages as incidental to the relief sought by rescission. The defendant's contention has no merit.

2. Was the sale induced by fraud? The Kirsch Manufacturing Company was organized with a small capital in 1907 to engage in the business of manufacturing and selling fixtures for window draperies. From the beginning defendant, Kirsch, has been its president and managing director. Through his efforts it is said to have become the largest manufacturing establishment of its kind in the world, with an authorized capital of $1,000,000 and an asset value of $3,000,000. It was very prosperous and paid large dividends. Mr. Backus was an early stockholder and was well pleased with his investment. He had no part in the management of the business and did not concern himself with its financial condition. He had confidence in the business ability and integrity of Mr. Kirsch. Dominating and controlling the business as he did, Mr. Kirsch had knowledge of material matters not known to Mr. Backus and which would not appear from an examination of the books. In these circumstances he stood in a fiduciary relation to the stockholders, and, when dealing for the purchase of

their stock, was bound to impart to them any knowledge he had of facts affecting its value. *Bollstrom* v. *Duplex Power Car Co.*, 208 Mich. 15; *Buckley* v. *Buckley*, 230 Mich. 504.

Having in mind the rights of the plaintiffs as stockholders and the duty of the defendant as chief corporate officer of the company, in considering the evidence as to the allegations of fraud, we cannot avoid the conclusion that he withheld information affecting the value of the stock which he was honestly bound to impart, and that he made material representations which do not accord with the facts. The record shows that Mr. Kirsch owned 60 per cent. of the stock, and, at the time he bought of the plaintiffs, was negotiating with investment brokers for a complete reorganization of the company on a plan that would enhance the value of the stock. To reach this result he set about securing an 85 per cent. control. On June 18, 1928, he addressed letters to various stockholders, including the plaintiffs, in which he stated that he had definitely decided to retire from the business, and intended to sell the major portion of his stock; that he felt a moral responsibility for the safety of his stockholders' investments and therefore

"For my own satisfaction and to be relieved by our stockholders of further personal responsibility for the safety of their investments, I am offering you $20 a share for your Kirsch stock."

Apparently this letter was intended to create a fear in the minds of the plaintiffs that under different management their investment might not be safe. In view of the plaintiffs' confidence in the integrity of Mr. Kirsch and his demonstrated ability to carry on the business successfully, the representation that he was going to sell the major portion of his stock

and relinquish control of the business must have been a persuasive inducement for plaintiffs to sell their stock. The trial court found, and we think correctly, that defendant did not intend to sell the major portion of his stock and relinquish control of the business; that his real purpose was to secure greater control in the reorganized corporation. So that there was not only an actual misrepresentation of his motive in buying the stock but a concealment of future plans which might materially enhance the value of the stock. The plaintiffs were entitled to be told of the intended reorganization of the company and the future possibilities of the business. If he felt the necessity of giving a motive for buying the stock, he should have given it correctly and withheld nothing of material value. He also stated in his letter that the book value of the stock was about $15 a share. In his testimony he admitted that when he made this statement he had in his possession a recent appraisal of the American Appraisal Company showing the book value to be $21.58 a share. This was not known to the plaintiffs and would not have been disclosed to them if they had examined the books at that time. In respect to the book value there was both a misrepresentation and a concealment of a material fact. Also in this letter the plaintiffs were advised that in considering the value of the stock not to be influenced by the dividends recently paid because—

"These dividends were paid from the earnings over a period of years, and do not reflect the earnings of the past few years."

When the truth of this statement was challenged in his cross-examination, the defendant said:

"Well, that statement might have been misleading, but it was not intended to be so, I am sure."

It was misleading because it was not true. The earnings on which the last dividend was declared were greater in 1928. Notwithstanding that fact, well known to him, the defendant, testifying to an oral representation claimed by Mr. Backus, said:

It was "also possible that I told him that our earnings were . down on account of the reduced volume of sales."

After receiving this letter from defendant, Mr. Backus wrote to Eugene H. Rider, secretary of the company. Rider was a friend of Backus. He had interested him in making his original investment in the stock. In the letter Backus said:

"I am just in receipt of a letter from Mr. Kirsch asking me to sign a paper stating whether I will or · will not sell my stock in the Kirsch Company. I, of course, am at a loss to understand just why, and thought that perhaps you could in confidence give me something of an idea of what is going on. I will appreciate anything you may tell me. I have the highest opinion of both Mr. Kirsch and the Kirsch Company, and, of course, dislike to dispose of my stock unless it is best."

When Mr. Rider received this letter he took it to Mr. Kirsch and asked him how to answer it. Mr. Kirsch told him what to say in answer, and approved of what was written. So that any representations in the letter affecting the value of the stock were representations of Mr. Kirsch. More than that, in dictating how this letter should be answered, Mr. Kirsch wrongfully interfered with the attempt of Mr. Backus to make an independent investigation. The answer, in substance, stated that Mr. Kirsch had made him a good offer for the stock; that it was Mr. Rider's honest opinion he should accept it, and that no dividends would be paid for two years be-

cause a new building was being erected which would consume two years' earnings, or about $200,000. This statement gave Mr. Backus the impression that the earnings of the company were about $100,000 a year, whereas in truth they were $350,000 and upwards.

These representations it is claimed were repeated and enlarged upon in an oral interview between defendant and Mr. Backus, but it is not necessary to pursue the subject further. We have mentioned sufficient to justify a rescission of the sale.

3. The third and final question relates to the assessment of damages. The stock was not listed. It had no market value. There was no dealing in the stock. Defendant introduced evidence of an occasional sale for less than the price paid by the defendant. This testimony is of but little help in ascertaining the value. The plaintiffs' expert witness, Martin, estimated the value to be about $35, but as he seems to have been influenced in part by market quotations of the new Kirsch Company stock six months after the sale, we are not inclined to accept his estimate as the correct value. The defendant himself placed a cash value of $30 a share on the stock at the time he transferred it to the new corporation. That was the price he expected to get on the reorganization of the company. He had offered that price to some other stockholders. Considering the book value of the stock, the prosperous condition of the business, its volume of sales and net earnings, we are of the opinion that $30 a share was a fair value at the time of the sale by the plaintiffs. The court fixed the value at $32 a share. In respect to the damages the decree is modified. In other respects it is affirmed.

The defendant will have costs.

CLARK, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.