Norman B. LAWTON and Leonard B. Lawton, Appellants,

v.

Dorothy K. STRONG, Appellee.

No. 13039.

United States Court of Appeals Sixth Circuit.

Nov. 20, 1957.

Robert S. Marx, Cincinnati, Ohio, John J. Sloan, and Lawrence I. Levi, Detroit, Mich., on the brief, for appellant.

Charles S. Toy, Detroit, Mich., for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal attacks the judgment of the District Court entered in a case tried without a jury, adjudging defendants liable for damages for constructive fraud in the purchase by defendants from the plaintiff, their sister, of 8,020 shares of stock in the Star Cutter Company, a Michigan corporation, formed in August, 1949.[1] The business had been started in 1927 by the father of plaintiff and defendants. It had operated as a family corporation until 1940 and as a family partnership from 1940 to 1949. The transactions between the parties arranging for the sale of plaintiff's stock to defendants were instituted while the concern was a partnership and were intended to bring about the purchase of plaintiff's partnership interest.

At the time of the negotiations for sale, defendants were the working partners having control and charge of the operation of the business, plaintiff for several years having been an inactive partner. During this inactive period plaintiff sometimes requested to be allowed to draw money from her capital account, in which profits had accumulated, but was informed that there was no money then available for her. The partnership articles provided for division of the profits "annually." Since plaintiff derived little income from the partnership for several years, she intended to dispose of her partnership interest and, on the advice of her mother, she consulted defendants, her

brothers. Plaintiff requested information from defendants as to what her interest was worth and testified that defendants in effect said they would examine the books and let her know. Defendants testified that they told plaintiff they would see how much they could afford to pay for her interest and would give her the information. Defendant Norman Lawton later reported that he and Leonard Lawton would pay $30,000, $10,000 of which would come from plaintiff's drawing account in the partnership and $10,000 from each of the brothers. Later, under the advice of the partnership accountant, to avoid questions that might arise under the tax laws, defendants had the partnership changed into a corporation. Plaintiff assigned her 8,020 shares of stock to defendants on receipt of one check for $10,000 from each defendant. The book value of plaintiff's stock at the time of transfer was at least $80,200, but plaintiff had no knowledge of this. The court found that it was the duty of the brothers to "fully inform the sister as to the financial affairs of the partnership and the book value of the sister's interest. This they did not do."

The District Court found that the sale of the stock and the contract for the sale of plaintiff's partnership interest were parts of one and the same transaction and that a fiduciary relationship existed between the parties. The court held that in view of defendants' control and complete knowledge of the business as compared to plaintiff's lack of knowledge, in view of the fiduciary relation existing between partners under which the obligation of utmost good faith exists and the reliance of plaintiff upon her brothers, plaintiff was entitled (1) to a fair and adequate price for her interest, and (2) to information from defendants which would enable her to form a sound judgment of the value of what she sold. This holding is in accord with the applicable law, including the Michigan decisions. Brooks v. Martin, 2 Wall. 70, 17 L.Ed. 732. In the Brooks case one partner was the sole agent of the partnership for an-

---

1. The parties will be denominated as in the court below.

other, who relied on him wholly for true accounts. As declared by the Supreme Court, page 82 of 2 Wall.:

"If the parties are to be regarded in this transaction as holding towards each other no different relations from those which ordinarily attend buyer and seller; and as, therefore, under no special obligation to deal conscientiously with each other, we are satisfied that no such fraud is proven as would justify a court in setting aside an executed contract. But there *are* relations of trust and confidence which one man may occupy towards another, either personally, or in regard to the particular property which is the subject of the contract, which impose upon him a special and peculiar obligation to deal with the other person towards whom he stands so related, with a candor, a fairness, and a refusal to avail himself of any advantage of superior information, or other favorable circumstance, not required by courts of justice in the usual business transactions of life."

The court then continues, page 85 of 2 Wall.:

"We lay down, then, as applicable to the case before us, and to all others of like character, that in order to sustain such a sale, it must be made to appear, first, that the price paid approximates reasonably near to a fair and adequate consideration for the thing purchased; and, second, that all the information in possession of the purchaser, which was necessary to enable the seller to form a sound judgment of the value of what he sold, should have been communicated by the former to the latter."

Buckley v. Buckley, 230 Mich. 504, 508, 509, 202 N.W. 955; Backus v. Kirsch, 264 Mich. 339, 342, 343, 249 N.W. 872. Cf. Lightner v. W. H. Hill Company, 258 Mich. 50, 242 N.W. 218, 84 A.L.R. 601. See also Goodrich v. Waller, 314 Mich. 456, 461, 462, 22 N.W.2d 862.

■ Defendants vigorously contend that no evidence was introduced of misrepresentation or fraud. The court specifically found that defendants had practiced concealment and given untrue statements in answer to plaintiff's request for information. While the testimony on this point is in conflict, this finding is supported by the record. Moreover, in case of constructive fraud such as may exist in a fiduciary relationship it is not necessary to prove deliberate or intentional fraud. Brooks v. Martin, supra, 2 Wall. 82, 85; Goodrich v. Waller, supra.

Defendants also contend that the record presents no proof of damages. This contention is based upon their theory that no evidence was presented of the actual value of plaintiff's partnership interest. The court, they contend, relied only upon book value in its determination of damages.

The majority of the court concludes that this contention has no merit. The court had before it, and evidently considered, items of evidence as to value apart from book value. It is true that in effect the court found the book value equivalent to actual value, for it found specifically that plaintiff's stock was worth not less than $93,200 and not more than $106,177.97. The last figure is the book value of plaintiff's interest for late May or early June of 1949.

■ Where, as here, no market value is shown, the value of stock may be shown by evidence tending to show its intrinsic value. Commonwealth of Virginia v. State of West Virginia, 238 U.S. 202, 213, 35 S.Ct. 795, 59 L.Ed. 1272. Such evidence was presented here.

This business had been a prosperous and growing concern for many years before and up to the transaction of 1949. The record shows that the partnership made substantial profits. The court found that the profits were applied to the respective drawing accounts of the partners in proportion to their respective interests and that "Norman and Leonard being working partners, withdrew funds from their shares of the capital for living expenses, and the profits of Dorothy and

her sister Vivian continued to pile up because they did not withdraw their shares."

In the year 1948 the partnership had cash on hand in the amount of $127,600 and in the year 1949, when the sale was consummated, there was $157,800 cash on hand. The accounts payable during that time were between $20,000 and $30,000.

The partnership articles expressly made book value the determining factor in valuation of a partnership interest upon severance due to "voluntary retirement, death, bankruptcy or otherwise * * *." The book value of the partnership herein was based upon cost of assets, all liabilities and depreciation being deducted, with nothing added for good will. It was shown by defendants' witness, accountant for both the partnership and the corporation, that the concern had a very substantial volume of business. When the contract of sale was made between plaintiff and defendants few contingent liabilities existed against the corporation. Two important controversies with the government had been settled and closed. That the parties regarded book value as being the value, both of the partnership interest and of the stock, was shown by the fact that when the corporation was formed each partnership interest was transferred in full payment for the stock received by each partner. Moreover, defendant Leonard Lawton, secretary and treasurer of the corporation, in charge of personnel, much of the purchasing, maintenance, and general work in the plant, testified that his own stock in the new corporation was worth $10 a share. If this was true, plaintiff's stock was worth the same amount and in the aggregate was worth $80,200.

 This testimony of Leonard Lawton is not considered in the dissenting opinion. By the great weight of authority the owner of personal property is qualified by his ownership alone to testify as to its value. 37 A.L.R.2d 974 and cases cited from 40 states. The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value. Hellstrom v. First

Guaranty Bank, 54 N.D. 166, 209 N.W. 212, 45 A.L.R. 1487; Kohl v. Arp., 236 Iowa 31, 17 N.W.2d 824, 169 A.L.R. 1067. Cf. Kinter v. United States, 3 Cir., 156 F.2d 5, 172 A.L.R. 232.

This rule is also applied in the State of Michigan. Kavanagh v. St. Paul Fire & Marine Insurance Co., 244 Mich. 391, 221 N.W. 119; Mason v. Partrick, 100 Mich. 577, 59 N.W. 239. Cf. Andries v. Everitt-Metzger-Flanders Co., 177 Mich. 110, 142 N.W. 1067; Michaud v. Grace Harbor Lumber Co., 122 Mich 305, 81 N.W. 93.

 The testimony of defendant Leonard Lawton that his stock in the corporation was worth $10 a share was not only competent but was based upon exceptional experience. He and his brother Norman had been for a number of years, as the court found, substantially exclusive managers of the partnership. No financial reports were issued to any members of the partnership but defendants, by virtue of their management, had personal knowledge of the property, of the business and assets of these two concerns. This fact rightly gave weight to defendant Leonard Lawton's testimony as to the value of the stock and strongly supported the finding of the court that the value of plaintiff's partnership interest at the time defendants agreed to purchase it was at least the amount of book value. Yet, in spite of Leonard Lawton's exclusive knowledge and experience and his fiduciary relationship to plaintiff, he told her upon inquiry that she would be lucky to get $3,000 for 8,020 shares, although he himself recognized and testified that the stock was "worth $10 a share." The court found specifically that "there was nothing included in the book value that actually was not there in the business." The majority of the court concludes that the District Court rightly found that plaintiff's interest was worth the book value, that plaintiff relied on the information given by her brothers, and that there was a great disparity between the $20,000 that she received and the $80,200 which plaintiff's shares were worth.

We cannot say that these findings are clearly erroneous. In fact, the findings in general are clearly correct. Under Federal Rules of Civil Procedure, rule 52, 28 U.S.C., we are bound by the facts determined by the District Court.

The judgment is affirmed.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

I am not in agreement with my colleagues on the question of damages.

The District Judge, in concluding his opinion, made a finding that as a result of the legal misrepresentations of the appellants, the appellee sustained a financial injury and that "The financial injury she sustained was $60,200, which is the difference between the book value of her stock and the amount that she realized, the book value of the partnership interest and stock, both, and the amount she realized from the sale." Judgment was entered for that amount plus $19,188.72 interest, or a total of $79,388.72. I am of the opinion that the use of the book value of the stock instead of its market value was error.

The general rule is well settled that in an action for damages by a seller of personal property claiming to have been defrauded, who does not elect to rescind, the measure of damages is the difference between the value of the property sold and the value of what was received in exchange therefor, and that the burden is upon the plaintiff to establish such damage by competent evidence. The amount of such loss, if any, cannot be left as a matter of conjecture. Restatement, Torts, Sect. 549(a), Comment c, page 549; Chapman v. Bible, 171 Mich. 663, 667, 137 N.W. 533, 43 L.R.A.,N.S., 373.

Under such circumstances, value means market value, the price it would bring in the open market. Restatement, Torts, supra. Bagdasarian v. Gragnon, 31 Cal. 2d 744, 753, 192 P.2d 935. In the case of corporate stock, it is not book value. Book value is quite different from market value, particularly in the case of a small minority interest in a closely held family corporation. Herpolsheimer v.

Michigan Trust Co., 261 Mich. 209, 218–219, 246 N.W. 81; People v. Gilbert, 163 Mich. 511, 128 N.W. 756; Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 152; Oertel Co. v. Glenn, D.C.W.D.Ky., 13 F.Supp. 651, 653.

Appellee's evidence with respect to the value of her stock related to its book value. No witness attempted to give its market value. I have no disagreement with the finding that the book value of the stock was $80,200. Nor with the finding that "there was nothing included in the book value that actually was not there in the business." Nor with the finding that the partners transferred their respective partnership interest to the corporation at its book value in exchange for their stock. Such facts pertain to the book value of the stock, not market value. The provision in the Articles of Partnership which required a partner to offer his stock to the other partners at book value before selling to an outsider has no bearing on the question. That merely gave the partners an option to buy the stock at book value; they were not required to buy it at that value. It does not show market value or that market value was the same as book value, but was a common provision used in articles of partnership for the protection of remaining partners.

If the opinion of the District Judge be construed as making a finding that the market value of the stock was the same as its book value, we have this difficulty. The best evidence of market value are sales in the open market. The appellee introduced no evidence as to sales of the stock in the open market. In the absence of such sales, many factors have to be considered, including net earnings record in the past, earnings potential in the future, economic conditions in general and particularly in the field in which the manufactured article will be sold, quality of management, sufficiency of working capital, condition and age of plant equipment including the effect of any new patents, local labor conditions and possible increased labor costs, probable changes in local and national tax laws, possible

changes in freight rates or transportation costs, position in the industry, and present and possible future competition. All these have a material bearing on future earnings which is a much more important factor in establishing market value than is existing book value. In Com. of Virginia v. West Virginia, 238 U.S. 202, 215, 35 S.Ct. 801 the Supreme Court said "it clearly would not have been just to value the shares on a statement of book cost and surplus without taking into consideration the earning capacity." See: Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co., 318 U.S. 523, 540–541, 63 S.Ct. 727, 87 L.Ed. 959; Stern v. United States, 6 Cir., 204 F.2d 647, 649–650.

The burden of proof to prove market value was upon appellee; it was not incumbent upon appellants to show factually how much it differed from book value. In speaking of the value of the stock of a minority stockholder in a closely held family corporation, the Supreme Court of Michigan said: "Book value is one thing but market value quite another. * * * It is a matter of common knowledge that holdings of this type at best are of uncertain market value." Herpolsheimer v. Michigan Trust Co., supra, 261 Mich. 209, 218–219, 246 N.W. 84. Examples of the application of this rule are shown in Com. of Virginia v. West Virginia, supra, 238 U.S. 202, 35 S.Ct. 795, where in fixing the value of stock in several different railroad companies, the Court approved a valuation of $117.43 per share instead of the book value of approximately $150.-00 per share in one instance, a valuation of $32.80 per share instead of the book value of approximately $53.00 per share in another instance, a valuation of $114.-40 per share instead of the book value of $121.86 per share in another instance, and a valuation of $116.95 per share instead of the book value of $131.16 per share in another instance. In another instance, the Court approved a deduction of five per cent from book value, pointing out that to arrive at a fair estimate of actual value there should be some deduction for the expense of liquidation.

These valuations did not involve the element of a small minority interest in a closely held family corporation, which unquestionably is a material depressing factor in determining market value.

The Supreme Court in that case also disapproved the statement made in some cases that par value of stock is prima facie actual value and stated "There is no such presumption of law and common experience negatives rather than raises such an inference of fact. * * * Shares represent the proportionate interest of the shareholders in the corporate enterprise, and a rule that this interest in the absence of all supporting evidence should be taken as actually worth the par of the shares would be wholly artificial. There is no exigency in the administration of justice which requires or justifies such an extreme assumption."

In Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 152, the Court of Appeals expressly disapproved the contention that the book value of the shares of stock in a corporation was any measure of their actual value. It stressed the importance of earning capacity on which, it pointed out, balance sheets throw little light.

In Ahlenius v. Bunn & Humphreys, 358 Ill. 155, 168–169, 192 N.E. 824, 830, 95 A.L.R. 913, the Supreme Court of Illinois referred to the numerous material elements that must be considered in determining the value of corporate stock, referred with approval to the ruling in Borg v. International Silver Co., supra, and stated: "The use of book values, especially, to measure the value of corporate shares, owing to the multifarious uses for which they are employed, is generally condemned as unsound."

In the absence of such evidence as above referred to and its consideration by the District Judge, a finding that the market value of the stock in question was the same as its book value is so contrary to common knowledge as to make it, in my opinion, clearly erroneous. Ahlenius v. Bunn & Humphreys, supra, 358 Ill. 155, 168, 192 N.E. 824.