**SINCLAIR REFINING CO. v. GUTOWSKI.**

No. 11353.

United States Court of Appeals
Sixth Circuit.

April 3, 1952.

J. Cameron Hall, Detroit, Mich. (Crawford, Sweeny & Dodd, Detroit, Mich., on the brief), for appellant.

Harry M. Nayer, Detroit, Mich. (Howard, Howard & Plasko and Nayer & Podolsky, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, Chief Judge, SIMONS and McALLISTER, Circuit Judges.

HICKS, Chief Judge.

Sinclair Refining Company appeals from a judgment in the amount of $8,000 against it in favor of Walter Gutowski, appellee.

Appellee based his suit on two theories. One was that appellant had breached a written lease and the other was that it had breached an oral lease for the operation of a gasoline service station. No written lease was shown.

Recovery was had on the theory set forth both in the complaint and in the charge of the Court that appellant had breached an oral agreement with appellee for the rental of a Sinclair Gasoline service station at the corner of 21st and Eureka Avenues, Wyandotte, Michigan, for a period of one year.

Prior to the occurrence of the matters complained of appellee had for three years operated a gasoline service station in Wyandotte, selling "Gulf" products. Immediately preceding the period in question appellee had five employees and had a net profit of approximately $8,000 per year and a sales volume of about 25,000 gallons of gasoline per month. It was undisputed that in comparison with the new station here involved the old station was inferior with respect to location, capacity and appearance. Appellee had had about fourteen years experience in the gasoline service station business.

In May, 1949, appellee discovered that a new station was being erected by appellant in the neighborhood of his old Gulf station and he thereupon went to the offices of appellant in Detroit to make an application for the operation of the new one. While there he was interviewed by Mr. Hampton, an employee of appellant, with reference

to his qualifications and his previous volume of business.

On May 23, 1949, further negotiations took place at appellant's office between appellee and Hartman, another employee of appellant, wherein appellee and Hartman agreed upon the duration of the contemplated lease, its rental and its location. Other particulars were agreed upon including the proper amounts and types of advertising and the sales materials to be used at the station.

Following these negotiations the appellee signed form No. 1610-A station lease, and his signature was witnessed by Hampton and Hartman. Appellee was then taken to the office of Mr. Cocanougher, appellant's District Manager, who in the presence of Hartman welcomed him as a dealer. Mr. Cocanougher assured appellee that he would do better in the new station than he had in the old one. The lease provided that it was not to become effective until it was signed by appellant's District Manager. It was never signed by Mr. Cocanougher.

The next day after appellee signed the lease Hartman appeared at the old station and reaffirmed the agreement and asked appellee to sign three separate checks, one for $100 for security deposit to appellant, one for $52.50 for the Picture News and one for $32 for the Pratt Posters. The latter two were for advertising material to be used in connection with the operation of the new station. Appellee had written one check for the total amount while he was in appellant's office on the previous day. Sometime during the latter part of July appellee secured the keys to the station from the building contractor so that he could install the necessary equipment for its operation. From May through July appellee received advertising materials which represented him as a dealer for appellant, for which he had paid by the checks given to Hartman. He also received a list of automobile owners in the neighborhood of the new station, which list described appellee as "dealer No. 49-808."

Relying upon his alleged agreement for the lease of the new station appellee induced his brother Bernard to leave his present employment so that he could operate the old station for a period of one year, and appellee secured additional help which would be available for the operation of the new station. He also purchased equipment to be used in the new station.

In late July on the eve of the commencement of operations at the new station and after appellee had completed all his preparations therefor, Hartman for the first time demanded that appellee install the Sinclair line of products in his old station. Appellee declined to do this. Upon such refusal Mr. Cocanougher and Hartman came out to the old station and renewed the demand and advised appellee that they could not do business with him unless he conformed to their demands. Appellee again refused, whereupon he was informed that he was not to be allowed to operate the new station.

Upon the trial appellee rested his case after presenting testimony substantially to the foregoing effect. Appellant thereupon made a motion for a directed verdict, which was denied. Appellant did not submit any testimony in support of its defense. The jury returned a verdict for appellee in the amount of $12,000. Appellant filed a motion for a judgment notwithstanding the verdict and in the alternative for a new trial. This motion was denied, but during the argument thereon appellee agreed to a reduction of the verdict to $8,000 upon which judgment was entered and from which the appeal was prayed.

Appellant contends that the evidence introduced by appellee does not conform to the allegation of the complaint. This contention was predicated upon a remark made by the Court, who said:

"Well as I see this matter now it is clear enough what the plaintiff here claims is that the defendant failed to carry out an oral agreement to enter into a lease. * * *"

Appellant then entered a general objection to recovery on the ground that the complaint did not allege an agreement to make a lease. Appellant took no further steps in this particular matter although the Court suggested that it might amend the complaint to conform to the proof. We think that this particular matter, if material,

would be determined against defendant by Rule 15 (b) of the Federal Rules of Civil Procedure, 28 U.S.C. See American Fork & Hoe Co. v. Stampit Corp., 6 Cir., 125 F.2d 472, 474; Continental Illinois Nat. Bank & Trust Co. v. Ehrhart, 6 Cir., 127 F.2d 341, 343. But we think that it is not particularly important.

■ The Court was in error in the statement that appellee claimed that appellant failed to carry out an oral agreement to enter into a lease. Ordinarily an agreement to make an agreement carries with it no valid obligation. See A. G. Andersen & Co. v. Texas Co., 2 Cir., 279 F. 76, 79; American Merchant Marine Ins. Co. v. Letton, 2 Cir., 9 F.2d 799, 801; Wynne v. McCarthy, 10 Cir., 97 F.2d 964, 970.

■ Moreover, all this to one side, the appellee made a specific allegation in the complaint that appellant leased the Sinclair station to him for a period of one year; that he signed form No. 1610-A and that Cocanougher, the District Manager, and Hampton, accepted the offer for appellant. This allegation was at least tantamount to an averment of an oral contract which was good in parole and was binding upon appellant if Cocanougher and Hampton had authority to execute it. Appellant does not contend that Hartman and Cocanougher, the District Manager, were not its agents. In fact in paragraph five of its answer appellant substantially admits that they were, but appellant leans heavily upon the provision in the lease that it was not to become effective until it was signed by the District Manager, but this provision does not necessarily require a directed verdict in favor of appellant. There are numerous other weighty features to be considered. Appellant conducted an extensive business in refining and selling gasoline. It had its main offices on Waterman Street in Detroit, and it had its new Wyandotte station under construction. There is evidence tending to show that both Hartman and Cocanougher, its District Manager, were in charge of appellant's business in both places and that they were endeavoring to lease the new station.

We do not now restate the evidence, but we do think that a jury might reasonably draw an inference from all the circumstances, including what was said and done, that appellant's agents had the authority to lease the station to appellee orally, if not otherwise. At least it appears to us that appellee as a sensibly prudent man, using diligence and discretion, would in view of all the circumstances naturally suppose that the agents possessed such authority. It must be kept in mind that these agents breached the contract with defendant's approval not because it was not in writing signed by its manager, but because appellee would not sell Sinclair products in its Gulf station. Appellant's motion for a directed verdict and its motion for a verdict in its favor and the alternative for a new trial, was properly denied.

■ Upon the finding of the jury that appellant executed an oral lease to appellee for the Sinclair station appellant contends that it was barred by the Michigan Statute of Frauds. This is not correct. The allegations in the complaint and the evidence is that the lease was for a period of one year and it was, therefore, not barred. Michigan Statutes Annotated, Sec. 26.908, Comp.Laws 1948, § 566.108.

■ The party to whom appellant finally leased the station paid appellee the sum of $1,391.00 to reimburse him for the amount he had paid to equip the station. Appellant also returned to appellee two uncashed checks totalling $132.00, which appellee had given him and he gave appellee a refund check for $52.50, these checks as indicated above, representing amounts advanced by appellee for advertising materials and as a securing deposit. Appellant claims that these payments constituted accord and satisfaction of appellee's claim. The contention is baseless. There was no evidence to support it. In Union Indemnity Co. v. United States, 6 Cir., 74 F.2d 645, 646, we said: "An 'accord' implies a disputed claim and an agreement to settle it, supported by a sufficient consideration."

■ Appellant contends that the judgment for $8,000.00 should be set aside because it represents the loss to appellee of prospective damages; that the Sinclair

station was a new business, and that the profits therefrom to appellee would be too speculative. There was expert testimony to the effect that this amount would represent the minimum profit that would be realized. We cannot say that the amount so fixed was not the natural and probable consequences of the breach or within the reasonable contemplation of the parties. We find no reason for setting it aside or disturbing the discretion of the Court in sustaining it. See Marquette Cement Mfg. Co. v. Campbell Const. Co., 6 Cir., 184 F.2d 352, 354.

We have carefully examined all other points raised by the appellant and find no reversible error therein.

Judgment affirmed.