### McCLARY v. MIDLAND LAND & DEVELOPMENT CO.

Civ. A. No. 1566.

United States District Court
E. D. Tennessee, N. D.

May 29, 1952.

H. H. McCampbell, Jr., Knoxville, Tenn., for plaintiff.

Ambrose & Wilson, S. F. Dye, L. C. Morton, Clyde W. Key, Andrews, Christenberry & Mann, Knoxville, Tenn., J. M. Underwood, Clinton, Tenn., Lowrance & Stivers, Memphis, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This action was commenced by plaintiff, McClary, subcontractor, to recover the balance due for painting houses under contract with the defendant, Midland, contractor with Roane-Anderson Company, a contracting agent, or maintenance contractor, of the United States Government. Items of recovery sought are damages for alleged breach of the contract by Midland,

compensation for items of work added during performance of the contract, and items in excess of estimates, herein called overruns. Damages alleged are described as overtime wages paid by McClary to painters, made necessary by failure of Midland to have three houses per day ready for painting during the performance of the contract.

■ On two occasions during the performance period McClary caught up with Midland, and during the early weeks of performance Midland did not have three houses per day ready for painting. Midland's contract with Roane-Anderson provided for rehabilitation of 253 houses in Oak Ridge. Painting of the houses was sub-contracted by Midland to McClary, a pertinent provision of the McClary contract being the following: "McClary agrees that he will commence work under this contract within one week after receiving notice from Midland to proceed with the performance of this contract, and after McClary commences work he agrees to complete the aforesaid work at the rate of three houses a day."

The quoted language is all the contract contains relative to three houses per day. Had Midland sued McClary for failure to paint three houses per day, McClary could have pleaded impossibility of performance by reason of Midland's default in not having three houses ready. Any cause of action in favor of McClary, however, would have to rest upon an implied promise by Midland to have three houses ready each day. No reason is suggested why such promise should be implied, except that McClary asserts that he organized his painting crew on the assumption that three houses per day would be ready. When he caught up with Midland's rehabilitation forces he says he had to lay off some of his painters, in consequence of which he later got over a hundred houses behind and had to work his men overtime and on Saturdays and pay them overtime wages.

Assuming, without so holding, that there was an implied promise by Midland to have three houses ready, the Court finds that McClary has not made out a case for damages for breach of contract. The evidence shows that he could have recruited more painters whenever he wanted them and that he worked his men overtime because from a purely business consideration he expected to fare better than would have been the case with a larger force of painters. Some pressure was put on him to employ more painters when he fell behind. He was also urged to work on Saturdays. There was no compulsion upon him in the matter of choice between employing more painters and avoiding overtime and Saturday work on the one hand, and retaining his small force and working overtime. He chose the latter course.

■ His second item of recovery has more merit. After he had entered upon his contract with Midland, a modification was made in his contract by addition of handrails, stiffeners and posts. This addition required painting 5,742 additional board feet, consisting chiefly of two-by-fours. The above board footage would amount to 8,613 square feet of surface to be painted. From conflicting proof the Court concludes that the claimed eight cents per square foot, or the resultant amount of $689.04, is reasonable compensation for this extra work. On account of this extra work, Midland has voluntarily paid into Court $459.36, which leaves still to be paid the sum of $229.69.

■ Other work which plaintiff asserts was additional consisted of repainting where doors had been hung wrong and had to be hinged on their other sides, gables where green lumber had shrunk upon drying and left unpainted streaks, installation of additional doors, door screen frames and window screen frames. The repaint work where doors were rehung consisted of puttying screw holes and painting the spots where the hinges had been located. The number of rehung doors may have been three or four, or from twelve to fifteen, the proof here being quite indefinite. The time required per door may have been one minute or one hour. The same indefiniteness attaches to the repainting of gable streaks. While there was this extra work caused by repainting, there was more than an offset for the reason that the sides of at

least one, and possibly three houses did not have to be painted at all, due to substitution of stained-shingle siding.

Additional doors, door screen frames and window screen frames are referred to as overruns. Examination of the modifications to the rehabilitation contract discloses that there were more underruns than overruns, the net result being a gain to plaintiff in the surface required to be painted. Accordingly, no case has been made out by plaintiff for compensation for the extras and overruns, it being conceded by McClary that Midland should have credit for underruns on the same theory that McClary claims he should be compensated for painting overruns.

■ Another item to which passing reference should be made relates to a lumber deal involving $603.57. The foreman of Midland, without the knowledge of Midland, told McClary that he would pay him for half of a work day on a Saturday. This Saturday work required payment of overtime. The foreman of Midland, in order to keep his boss from knowing about the unauthorized agreement with McClary, paid McClary with lumber belonging to Midland. The foreman made no record of this particular lumber that was delivered to McClary. When the Midland officials found out about the transaction they deducted $603.57 from the account that they owed McClary. McClary claims that Midland had no right to make this deduction and that he is entitled to a recovery in this suit for this $603.57. This claim cannot be sustained. The foreman's acts in relation to this item did not bind Midland. There is nothing in the record to show that Midland authorized or ratified this unauthorized act of its foreman. Rather, the proof shows that McClary was fully advised as to the foreman's lack of authority in this particular. Accordingly, if McClary has a right of action on this claim, it is against the foreman, not against Midland.

Upon being sued by McClary, Midland, being pressed also by creditors of McClary, deposited in the registry of the Court the sum of $13,187.66, which sum it admits owing to McClary under the painting contract. To this Midland should add the fur-

ther sum of $229.68, the unpaid portion of the amount due McClary on account of the handrails, stiffeners and posts, additional items for which Midland admits McClary should be paid. When this additional sum is paid, there should be in the registry of the Court $13,417.34.

Although this began as a simple lawsuit between McClary and Midland, Midland converted it into an action in the nature of interpleader by depositing in the registry of the Court an amount equal to what Midland then admitted to be its indebtedness to McClary on account of the painting contract. In its cross-action Midland named as defendants Burks-Hallman Company, Graning Paint Company, W. E. Biggs, and Union-Peoples Bank, creditors of McClary, and Hartford Accident and Indemnity Company, surety on the bond of McClary in favor of Midland. These creditors have brought in as additional defendants Roane-Anderson Company, Maryland Casualty Company, surety on Midland's bond in favor of Roane-Anderson Company, and United States Fidelity and Guaranty Company, surety on a replevin bond of Midland in favor of Union-Peoples Bank.

It is shown either by stipulation or by the proof that McClary is indebted to Burks-Hallman Company in the principal sum of $8,696.14, to the Graning Paint Company in the principal sum of $1,635.80, to W. E. Biggs in the principal sum of $2,380.56, and to Union-Peoples Bank in the principal sum of $9,769.15. Interest will increase the indebtedness in each case where interest is allowable. McClary's notes to the bank provide for 10% attorneys fees in addition to the principal sums. The total indebtedness of McClary to the listed creditors, exclusive of interest and attorneys fees, is $22,481.65.

■ As the amount which is, or will be, in the registry of the Court is only $13,417.-34, there is not a sufficient amount to pay all of the creditors in full. There is, accordingly, controversy among the creditors as to who, if any, are entitled to priority in the distribution of the funds. The 253 houses that were rehabilitated pursuant to Midland's contract with Roane-Anderson Company are owned by the United States

Government. For this reason liens provided by Tennessee law in favor of laborers and materialmen could not attach. In that situation, and in accord with the general practice in such cases, a bond was required of Midland by Roane-Anderson Company. This bond, on which Maryland Casualty Company is surety, contains the following:

"Now, therefore, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said subcontract, and any and all duly authorized modifications of said subcontract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue.

"The parties hereto agree that this undertaking shall be for the use and benefit of all creditors having just claims incurred by the principal for labor performed upon and for materials or services furnished for the work specified in said subcontract, whether lienable or otherwise, and this bond may be sued upon by them as if executed to them in proper person, as well as for the obligee."

In subcontracting the paint work to McClary, Midland required a performance and payment bond in the sum of $10,000 from McClary. This bond, on which Hartford Accident and Indemnity Company is surety, contains the following:

"Now, therefore, the condition of this obligation is such that, if the principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the obligee from all cost and damage which the obligee may suffer by reason of failure so to do and shall fully reimburse and repay the obligee all outlay and expense which the obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect.

"Provided, however, it shall be a condition precedent to any right of recovery hereunder that, in the event of any default on the part of the principal, a written statement of the particular facts showing the date and nature of such default shall be immediately given by the obligee to the surety and shall be forwarded by registered mail to the surety at its home office in the City of Hartford, Connecticut.

"And provided further, that no action, suit or proceeding, except as hereinafter set forth, shall be had or maintained against the surety on this instrument unless the same be brought or instituted and process served upon the surety within twelve months after completion of the work mentioned in said contract, whether such work be completed by the principal, surety or obligee; but if there is any maintenance or guarantee period provided in the contract for which said surety is liable, an action for maintenance may be brought within six months from the expiration of the maintenance period, but not afterwards."

Maryland's bond contains all of the requirements of 40 U.S.C.A. § 270a. It is, accordingly, in that respect a statutory, or Miller Act, bond. Section 270b provides, "That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, * * *."

Burks-Hallman Company is the only one of the material furnishers heretofore listed who gave to Midland the statutory notice. Burks-Hallman Company, accordingly, is the only creditor that could maintain an action against Midland, or Midland's surety, the Maryland Casualty Company, on the bond as a Miller Act bond. This is important for the reason that it enters into the

matter of priority in the distribution of the creditors' fund in the registry of the Court. By complying with the statute and by the circuitous route of subrogation, Burks-Hallman Company acquired a preference in the nature of a lien on so much of the fund as may be required to satisfy its claim in full.

Graning Paint Company, which might have had a similar preferred position against Midland and its surety, had it complied with the statute, is remitted to such other rights as it may have under the Maryland bond and to its rights as a general creditor, by reason of its failure to comply with the statute. Whether it has recourse against Midland and its surety depends upon whether Maryland's bond contains such additional provisions as to make it both a statutory and a common-law bond.

W. E. Biggs, who likewise would have enjoyed a preferred position as to $796.09, had he complied with the statute, is also remitted to his rights as a general creditor, with recourse, if entitled thereto, to rights under Midland's bond.

The main controversy over the subject of priority, or preference, is between Burks-Hallman Company and Union-Peoples Bank.

A short time after entering upon the performance of his painting contract, McClary began negotiations with the bank for loans sufficient to finance his operations under the painting contract. The bank claims a preferred position on the theory that it became an assignee of the proceeds of McClary's contract. Certain letters have been filed as exhibits and relied upon by the bank as effecting an assignment. First of these is the following letter dated March 21, 1950, from J. D. McClary to Midland:

"This is to state that J. D. McClary Construction Company authorizes and requests that the Midland Land and Development Company make out all estimate checks for work done on the T. D.U. Painting Contract #W-7401-eng.-115 in the amount of forty-eight thousand six hundred fifty four dollars and sixteen cents ($48,654.16) jointly to J. D. McClary Construction Company and Union-Peoples Bank, Clinton, Tenn. All payments will be made jointly until such time as notice is given signed jointly by the two parties aforestated."

The second is the following letter of March 21, 1950, from Midland to Union-Peoples Bank:

"We have subcontracted all painting work on Contract #W-7401-eng.-115, Subcontract C-93, for the sum of $48,654.16 to the J. D. McClary Construction Co., Oak Ridge, Tennessce. Mr. J. D. McClary has requested that we make all checks in payment for this work jointly to the J. D. McClary Construction Co., and the Union Peoples Bank. We will be glad to comply with this request."

The third is the following letter of March 22, 1950, from McClary to the bank:

"We hereby authorize the Union-Peoples Bank to deduct from estimates to be received by them from Midland Land and Development Company, an amount necessary to pay note or notes executed by us to the Union-Peoples Bank for the purpose of making payrolls covering our contract with Midland Land and Development Company Contract No. W-7401-eng.-115.

"We authorize Union-Peoples Bank to accept checks from the Midland Land and Development Company as per our letter dated March 21, 1950 to the Midland Land and Development Company and also our letter of March 21, 1950 to Union-Peoples Bank, both letters pertaining to the above contract between ourselves and the Midland Land and Development Company. We authorize Union-Peoples Bank to deposit to our account with them all monies from these checks after the payment of the notes described in first paragraph of this agreement.

"This agreement to remain in full force and effect until cancellation agreed to by both ourselves and Union-Peoples Bank."

In a purely legal sense, for failure of the assignor completely to relinquish con-

trol of the account, the foregoing letters did not constitute an assignment, valid as to parties not connected with the transaction. Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34. But as between these three parties it was treated as an assignment or, possibly in a more accurate sense, as a working contract in the nature of an assignment for the financing of McClary, an arrangement beneficial to Midland as well as to McClary. It appears that McClary executed notes to the bank in consideration of loans, that checks due McClary were regularly drawn by Midland payable jointly to McClary and the bank, and that the proceeds of the checks were used to pay the notes, any surplus being deposited to McClary's account. As a further safeguard in its financing arrangement the bank from time to time made inquiry of Midland as to amounts due McClary, receiving in response statements of the amount or amounts due and further assurance that the arrangement as to the issuance of checks would be continued.

The following letter dated August 2, 1950, was received by the bank from Midland:

"In your letter dated July 12, 1950 you ask the approximate amount due the J. D. McClary Construction Company on contract No. W-7401-eng.-115, and the amount you could expect to receive in checks made jointly to your bank and J. D. McClary Construction Company.

"We have to date paid McClary approximately $12,000, leaving approximately $36,000 to be paid.

"Unless you notify us to the contrary we will continue making each monthly check jointly until the contract has been completed.

"If we can be of any further assistance do not hesitate to call on us."

The last loans made by the bank to McClary are evidenced by notes bearing dates of October 6, 14, 20, 25, and November 3, 1950. Despite its assurances to the bank that it would continue making checks jointly to the bank and McClary, Midland on November 15, 1950, issued its last check in the sum of $8,696.14 to McClary, the bank, and Burks-Hallman.

On November 16, 1950, Midland wrote the following letter to the Burks-Hallman Company:

"We are mailing today a check in the amount of $8,696.14 to the J. D. McClary Construction Company at Oak Ridge, Tennessee. This check is made payable to J. D. McClary, Union-Peoples Bank and Burks-Hallman Company.

"For your information, in April of this year we agreed to a request made by McClary and the Union-Peoples Bank of Clinton, Tennessee, to make all checks on our Oak Ridge painting subcontract payable to McClary and the bank jointly."

Inclusion of Burks-Hallman as a payee was a violation of the working agreement existing between McClary. Midland and the bank. Burks-Hallman refused to endorse the check, in consequence of which the bank was unable to apply its proceeds to payment of McClary's notes. There is no basis for any inference that McClary would have declined to endorse the check. The Court, accordingly, finds that by reason of Midland's breach of the working agreement aforesaid the bank was damaged, potentially at least, in the sum of $8,696.14.

On December 19, 1950, by a proceeding in a State Court against McClary and Midland the bank, by original attachment undertook to fix a lien on an account owing to Midland on account of the rehabilitation contract by Roane-Anderson Company in the sum of $8,696.14. Midland on January 5, 1951, recaptured the account by way of replevin and furnished a replevin bond with United States Fidelity and Guaranty Company as surety. This bond, after a statement of the situation which gave rise to it, provides as follows:

"Now, if the said Midland Land and Development Company shall pay the debt, interest and costs in this cause, in the event this cause shall be adjudicated against the said Midland Land & Development Company, and this bond

is so conditioned on the aforesaid basis, this bond shall be void; otherwise it is to remain in full force and effect."

Because of the removal to this Court of the main action between McClary and Midland, and the conversion of the action into one in the nature of interpleader, the suit by the bank against Midland in the State Court is, by consent, held in abeyance pending adjudication of rights of all parties in this Court.

As heretofore indicated, the working arrangement between McClary, Midland and the bank was not such as to constitute an assignment valid against parties furnishing materials who have complied with the statutory provision relative to notice. In other words, it is not such an assignment as would give the bank preference over, or parity with, Burks-Hallman Company. Nevertheless, it was such a contract as to give the bank the right to judgment against McClary, Midland and Midland's surety, United States Fidelity and Guaranty Company, in the amount of the check, which is also the amount attached by the bank and recaptured by Midland through its replevin action, namely, $8,696.14, with interest at 6% from the date of the replevin.

■ The liability of Midland in this connection rests largely upon the doctrine of equitable estoppel, which is, that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Molloy v. City of Chattanooga, 191 Tenn. 173, 178, 232 S.W. 2d 24, 404. See, also, Greene County v. Tennessee Eastern Electric Co., 6 Cir., 40 F.2d 184, 186; Jackson v. Waller, 190 Tenn. 588, 590, 230 S.W.2d 1013. Any deficiency in the bank's pleading is treated as cured by amendment and the pleading, if so desired, may be amended to conform to the evidence on which the Court has based so much of its decision as favors the bank. See Sinclair Refining Co. v. Gutowski, 6 Cir., 195 F.2d 637, and cases cited.

Satisfaction of this judgment would leave McClary indebted to the bank on account of its notes in the principal sum of $1,073.-01, plus 10% of the total of all of the outstanding notes as contract attorneys fees, or a total of $2,049.92. As to this part of McClary's indebtedness, the bank is remitted to its rights against the fund in Court and against McClary.

As heretofore stated, the Maryland bond is a Miller Act bond. Burks-Hallman, having given the notice required by 40 U.S.C. A. § 270b, is entitled to full satisfaction of its claim out of the fund on deposit. But comparison between the statute, 40 U.S.C. A. § 270a, and the bond discloses that the bond goes beyond the requirements of the statute. The bond required by statute is "for the protection of all persons supplying labor and material in the prosecution of the work * * *." The bond as executed contains the required protective provision, plus the following additional provision:

"The parties hereto agree that this undertaking shall be for the use and benefit of all creditors having just claims incurred by the Principal for labor performed upon and for materials or services furnished for the work specified in said subcontract, whether lienable or otherwise, and this bond may be sued upon by them as if executed to them in proper person, as well as for the Obligee."

In Hogan v. Walsh & Wells, Inc., 180 Tenn. 670, 177 S.W.2d 835, 836, the court considered a bond of somewhat comparable provisions, the same being treated as both a statutory and a common-law bond because of additional provisions. It contained the words, "shall assure and protect all laborers and furnishers of material on said work * * *, *and also independently of said statutes.*" (Italics supplied.) There, certain claimants were held not entitled to recover as under a statutory bond, for failure to give notice, but they were held entitled to recover under the bond because of the italicized provision, which made it, also, a common-law bond.

■ In Maryland's bond the words, "whether lienable or otherwise," should be construed as a provision for the protection of laborers and furnishers of services and materials who, for failure to give notice,

have not brought themselves within the protection of the statutory provision of the bond. Under this provision Graning Paint Company is entitled to recover from Midland and Maryland, in the event the fund in court is insufficient to satisfy its claim in full. It has been stipulated that Biggs furnished insurance to McClary as a service to McClary's painting contract in the sum of $796. Biggs is entitled to recover this sum from Midland and Maryland, in the event the fund in court is not sufficient to satisfy his claim to this extent. Also, under the principle of subrogation alluded to in connection with the Burks-Hallman claim, Graning and Biggs would come ahead of the bank in the distribution of the fund. Thereafter, if there remains a balance in the fund, it should be prorated between Biggs and the bank, Biggs to take on the basis of his general creditor claim

of $1,584.56 and the bank to take on the basis of its general creditor claim of $2,049.92. However, to the claims of Burks-Hallman, Graning, and Biggs, should be added interest at the rate of 3% from April 3, 1951, the date on which they were made parties to this action, theirs being claims not within the interest statute, section 7305, Tennessee Code, and to the claim of the bank should be added interest on McClary's unpaid notes at 6% from November 10, 1950, the date on which they were payable, this being a claim within sections 7302 and 7305 of the Tennessee Code.

Arithmetically, the problem works out as follows, interest being figured from each interest date up to and including June 3, 1952, the latter being the approximate date on which this decision should be reduced to judgment.

| | Principal | Interest | Total |
|---|---|---|---|
| Burks-Hallman claim with interest 4–3–51 to 6–3–52 | $8,696.14 | $304.36 | $9,000.50 |
| Graning Paint Company claim with interest 4–3–51 to 6–3–52 | 1,635.80 | 57.25 | 1,693.05 |
| W. E. Biggs: | | | |
| For services on painting contract with interest 4–3–51 to 6–3–52 | 796.00 | 27.86 | 823.86 |
| For other credits to McClary with interest 4–3–51 to 6–3–52 | 1,584.56 | 55.46 | 1,640.02 |
| Union-Peoples Bank: | | | |
| On its claim for the attached account with interest from 1–5–51 to 6–3–52 | 8,696.14 | 736.26 | 9,432.40 |
| Accrued interest on $8,696.14 from 11–10–50 to 1–5–51 (To be added to next item) | | 81.16 ⎤ | |
| Balance of principal indebtedness with interest 11–10–50 to 6–3–52 | 1,073.01 | 100.86 ⎦ | 1,255.03 |

On the basis of what has been stated heretofore, McClary, for the benefit of his creditors, is entitled to judgment against Midland for the sum deposited in court, namely, $13,187.66, plus the additional sum of $229.68, or a total of $13,417.34.

Burks-Hallman Company is entitled to judgment in the sum of $9,000.50, to be satisfied out of the aforesaid fund on deposit with the court.

Graning Paint Company is entitled to judgment in the sum of $1,693.05, to be satisfied from the fund in court.

W. E. Biggs is entitled to judgment in the sum of $823.86, to be satisfied from the fund in court.

W. E. Biggs is also entitled to judgment in the sum of $1,640.02 against J. D. McClary, to be satisfied in part from the balance in court on a pro rata basis with the

bank, and to the extent that the fund is insufficient, from J. D. McClary.

Union-Peoples Bank is entitled to judgment against J. D. McClary, Midland Land and Development Company and United States Fidelity and Guaranty Company in the sum of $9,432.40, to be satisfied by execution against them.

Union-Peoples Bank is also entitled to judgment against J. D. McClary in the sum of $1,255.03, plus its contract attorneys fees of 10% of the principal amount of its notes, 10% of $9,769.15 being $976.91, the total of the judgment being $2,231.94, which is to be satisfied in part from the balance of the fund in court on a pro rata basis with the W. E. Biggs $1,640.02 claim, and to the extent that the fund is insufficient, from J. D. McClary.

No claimant or party hereto has established any grounds for recovery against Hartford Accident and Indemnity Company, or against Roane-Anderson Company.

Arithmetically, the distribution should be as follows:

From the fund on deposit, including the additional sum required of Midland, or total of $13,417.34, pay to Burks-Hallman the sum of $9,000.50; to Graning the sum of $1,693.05; to Biggs the sum of $823.86. This will leave a balance of $1,899.93, to be prorated between the Biggs general creditor claim of $1,640.02 and the bank general creditor claim of $2,231.94. Thus prorated, Biggs should be paid from the fund the sum of $304.74 and the bank should be paid the sum of $1,095.19. This will exhaust the fund, leaving McClary indebted to Biggs in the sum of $835.28 and to the bank in the sum of $1,136.75.

Each party will pay the attorneys' fees of his or its attorneys. Midland Land and Development Company will pay one-half of the Court costs and McClary will pay the other one-half. In the event the Court costs are uncollectable from McClary, that part of the fund in Court distributable to the two common creditors, namely, Biggs and the Union-Peoples Bank, will be taxed with this one-half of the Court costs, thereby reducing the common claims of the

bank and Biggs pro tanto. Costs, other than Court costs, including but not limited to the taking of depositions, will be paid by the party or parties who incurred such costs. The Clerk will reserve a sufficient amount of the common fund referred to herein to satisfy the Court costs that are assessed against McClary until it is determined whether such costs are collectable from McClary.

Let an order of final judgment be prepared in conformity with this opinion.