**LEE SHOPS, INC., Plaintiff-Appellee,**
**v.**
**SCHATTEN–CYPRESS COMPANY,**
**Defendant-Appellant.**
No. 16050.
United States Court of Appeals
Sixth Circuit.
Aug. 27, 1965.

Thomas W. Steele, Nashville, Tenn., for appellant, Cecil Sims, I. R. Schulman, Gullett, Steele & Sanford, W. Harold Bigham, Nashville, Tenn., on the brief.

Maclin P. Davis, Jr., Nashville, Tenn., for appellee, Waller, Lansden & Dortch, Nashville, Tenn., Nutter, McClennen & Fish, Boston, Mass., of counsel.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

The suit in the District Court was to recover damages in the amount of $250,-000. for breach of contract to sublease premises located near the Nashville

**14**

Municipal Airport. Jurisdiction was based on diversity of citizenship.

The case was tried by the District Judge without a jury. Adopting findings of fact and conclusions of law, he decided in favor of plaintiff and assessed damages in the sum of $200,000., for which amount he entered judgment against defendant. Additional findings and conclusions were made in a memorandum subsequently filed, denying defendant's motion to alter and amend and for a new trial.

In its appeal, Appellant Schatten-Cypress Company raised questions concerning its liability and also claimed error because anticipated profits were taken into account as a factor in determining the value of the sublease.

The City of Nashville had granted to Schatten-Cypress an option to lease vacant land located near the airport, for twenty-five years, at a rental of $12,000. annually, with the privilege of extending the lease for two additional periods of ten years each at a rental of $18,000. annually. The option agreement required Schatten-Cypress to construct at its own cost and expense a one-story building containing at least sixty thousand square feet of floor space and to pave the adjoining area. The improvements were to belong to the City upon termination of the lease.

Appellee, Lee Shops, Inc., was interested in subleasing the building to be erected on a portion of the premises for the purpose of operating a retail department store of the type known as a "discount house". There were no discount stores in the Nashville area at that time.

On August 17, 1960, Lee Shops submitted to the President of Schatten-Cypress a letter from Community Investment Corporation which indicated its willingness to make a loan of $240,000. under certain conditions, for the construction of a building on said premises.

On the following day a written agreement was entered into between Lee Shops and Schatten-Cypress, whereby the latter agreed to complete its negotiations for the leasing of said premises, to construct a building and parking area thereon, and to sublet the same to Lee Shops for a term of fifteen years, at an annual rental of two per cent of the first $4,000,000. of annual sales made in said building, plus one and one-half per cent of the next $2,000,000. of sales, plus one per cent of sales in excess of $6,000,000., with a minimum guaranteed rental of $75,000. per year. The sublease was to be "subject to a loan from Community Investment Corporation of Lawrence, Massachusetts, of $200,000., to be used in the construction of the building on said premises."

In October, 1960, Schatten-Cypress submitted to Community for approval a draft of a proposed lease from the City of Nashville to it. Paragraph 8 of the proposed lease provided that upon termination of the lease the lessee was required to deliver the premises in as good condition as normal wear and usage would permit, "damage by fire and other casualties and elements as are covered by insurance, excepted". Community objected to the quoted language and wanted it changed so as to read, "damage by fire and other casualties excepted". The reason for its objection was that the lessee might be required to restore the building if the damage resulted from causes not covered by insurance. Schatten-Cypress agreed to negotiate with the City for a change in the draft.

On November 10th and 11th, 1960, Schatten-Cypress was further advised by Community's attorney of its insistence upon a change in the language of the City's lease, and Mr. Schatten stated that he did not expect any problem in getting it straightened out. In the letter-agreement dated November 11, 1960, it was made a condition of the loan that the lease from the City be executed in the form attached thereto as Exhibit B, which contained the language satisfactory to Community.

Despite all this knowledge of Community's requirements, Schatten-Cypress on

December 6, 1960, without the knowledge or consent of Lee Shops or Community, and without making any request of the City to change paragraph 8 to conform to Community's requirement, proceeded to agree with the City to a form of lease which contained the objectionable features. This lease was approved by City Council and was signed by the City and Schatten-Cypress on December 21, 1960.

In the meantime Lee Shops caused a subsidiary to be organized under the laws of Tennessee. It executed the sublease, the performance of which was guaranteed by Lee Shops, and the papers were sent to Schatten-Cypress. It also incurred out-of-pocket expenses of $17,-188.65.

Lee Shops and Community did not learn that Schatten-Cypress had executed the wrong form of lease with the City until after December 23, 1960.

The City had agreed to other changes in the form of the lease requested by Schatten-Cypress, but after it was executed Schatten-Cypress exerted very little effort to effectuate a further change.

In January, 1961, counsel for Community made a proposal to Schatten-Cypress to waive objections to the form of the lease if Messrs. Schatten and Cypress as individuals would execute a guaranty that Community would suffer no loss as a result of the failure of paragraph 8 to contain the required language. Schatten-Cypress advised Community that it would not furnish such guaranty and that it would have to obtain the loan elsewhere.

On January 31, 1961 Lee Shops advised Schatten-Cypress that it could obtain the financing from Hub Investment Co., which would not require changing the form of the lease from the City. This was agreeable to Schatten-Cypress. Attorneys for Lee Shops then prepared the loan papers.

On February 6, 1961, Lee Shops again notified Schatten-Cypress that Hub had agreed to make the loan, at which time it learned that the premises had been

subleased to Zayre Corporation for a period of twenty years with an option to renew for two additional terms of ten years, at a minimum rental of $81,-250. per year. The building was to contain sixty-five thousand square feet of floor space and was to be constructed in accordance with plans satisfactory to Zayre.

The District Judge concluded that Schatten-Cypress owed a duty to negotiate in good faith to obtain a lease with the City that was satisfactory to Community, so that it would make the loan. He found that the change required by Community was a reasonable one. He further concluded that Schatten-Cypress breached its duty to negotiate in good faith, with the result that Community did not make the loan.

The District Judge further found that Schatten-Cypress had agreed to accept financing from Hub Investment Co. instead of from Community, and held that it breached its contract with Lee Shops by entering into the sublease with Zayre.

In its brief in chief Schatten-Cypress stated:

"With one or two notable exceptions the proof in this case is not controverted. * * * It should be pointed out, we think, that the major difficulty is not what the facts are but as to the proper conclusions to be drawn therefrom. It is of these conclusions that we complain primarily in this appeal."

But it is settled that the clearly erroneous rule applies not only to factual findings but also to inferences drawn from established facts. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1961); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947); Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858 (C.A.6, 1961).

In its reply brief Schatten-Cypress sets forth six of the findings of fact of the District Judge, which it claims are clearly erroneous.

■ The agreement to sublease entered into between Lee Shops and Schatten-Cypress contained no provision obligating Lee Shops to obtain financing for the construction of the building. The sublease, however, was to be subject to a loan from Community in the amount of $200,000. Community was procured by Lee Shops.

Under the circumstances Schatten-Cypress owed a duty to Lee Shops to comply in good faith with reasonable requirements of the lender. The District Court found that the requirement with respect to changing the language in the lease was reasonable; that there was no reason why the City of Nashville would not have agreed to the change had Schatten-Cypress made a bona fide effort to induce it to do so.

■ Even though obtaining the loan from Community was a condition precedent to the entering into of the sublease, Schatten-Cypress could not avoid liability by making the performance of the condition impossible, or by preventing it. Gulf Oil Corp. v. American Louisiana Pipe Line Co., 282 F.2d 401, 404 (C.A.6, 1960).

■ In any event, the Court found that Schatten-Cypress had waived the condition of the agreement as to the loan from Community in favor of a loan from Hub Investment Company. Restatement, Contracts, §§ 296, 297; 17A C.J.S. Contracts § 491, p. 690. In our judgment this finding was supported by substantial evidence and is not clearly erroneous.

■ The fact that negotiations with respect to the loan were carried on between the parties up to the time of the Zayre lease, is inconsistent with any claimed termination of the agreement to sublease. Apparently in January and the early part of February Schatten-Cypress was dealing with Lee Shops and with Zayre at the same time. Lee Shops had no knowledge that Schatten-Cypress was negotiating with Zayre. Lee Shops had every right to believe that its contract would be respected until it learned of the sublease to Zayre. In our opinion, the contract between Lee Shops and Schatten-Cypress to sublease was still in force and the rights of Lee Shops had not been cut off when the sublease to Zayre was made. The contract was breached by the sublease to Zayre.

### Damages

The principal issue over the damages relates to the testimony of Lee Shops' expert witness, Leo Klein, who was treasurer of the company. Klein had extensive experience in the leasing of stores in various parts of the country, extending over a period of twenty-eight years, of which ten to twelve years were devoted to leasing discount stores.

Klein testified as to the survey which he made of the location before the contract was made. He drove around Nashville with Mr. Schatten. He talked with real estate operators, with the Chamber of Commerce, and with a banker.

He related his conversation with Mr. Schatten, who told him that a discount store was needed in Nashville and would be very successful; that he would be able to do a business of at least five million dollars a year at the airport location. After making his survey, Klein concluded that Schatten's statements were correct.

Klein testified that in valuing a lease on a discount store the estimated profit from operations is a factor which should be taken into account.

Klein prepared three profit and loss statements showing the estimated results of annual sales of five million dollars, four million, and three million dollars, respectively. He explained in detail the items on the statements, which included costs of goods and operations. The profit and loss statements were received in evidence. They showed respective annual profits of $71,000., $47,800., and $17,100., which, projected into the fifteen-year term of the sublease, would amount to $1,065,000., $717,000., and $256,500. respectively. He testified that the statement based on sales of five million dollars represented the best estimate he could determine, if the sublease had been granted to Lee Shops.

After Lee Shops offered evidence as to all of these matters, a hypothetical question was propounded to Mr. Klein, which he answered, as shown in footnote.[1]

Schatten-Cypress offered no evidence to refute the testimony of Mr. Klein. It contended (1) that Klein did not qualify as an expert; and (2) that in determining the value of the sublease he took into account a factor which was purely speculative, namely, anticipated profits in a new business location.

■■ Whether or not Klein qualified as an expert was a matter which rested largely within the discretion of the trial judge, whose ruling may not be disturbed unless it is clearly erroneous. Spitzer v. Stichman, 278 F.2d 402, 409 (C.A.2, 1960).

■■ Klein was also in the position of an owner of Lee Stores. According to the overwhelming weight of authority, an owner is permitted to express an opinion as to the value of his own personal property. Lawton v. Strong, 249 F.2d 299, 302 (C.A.6, 1957). We think there was ample evidence to support the ruling of the District Court which qualified Klein as an expert in the field of leasing stores. It was not clearly erroneous.

■ The District Judge recognized the rule in Tennessee that damages for breach of contract to lease are ordinarily measured by the excess of the rental value of the property over the agreed rent. Jonas v. Noel, 98 Tenn. 440, 39 S.W. 724 (1897); Brummitt Tire Co. v. Sinclair Refining Co., 18 Tenn.App. 270, 75 S.W.2d 1022 (1930). He quoted from Jonas v. Noel, however, to the effect that

the purpose of the law is to give compensation for the loss of the bargain and to place the damaged party in as good a position as he would have been in had his bargain been fulfilled. He found that no intelligent determination of the value of the sublease could be made without taking into account as a relevant factor the income which may reasonably be expected to accrue during the term of the sublease.

■ The expert witness did give his opinion as to the value of the sublease. The fact that in determining its value he took into account estimated income as one of the relevant factors, goes only to the weight of his testimony and not to its competency. Hickman v. Coshocton Real Estate Co., 58 Ohio App. 38, 15 N.E. 2d 648 (1936); United States v. Ohio Water Service Co., 191 F.2d 648 (C.A.6, 1951).

■ No case from Tennessee dealing with the precise point has been cited to us and we are uncertain as to how the Tennessee Courts would rule on the subject. We need decide only whether the District Judge reached a permissible conclusion in his determination of the local law. Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924 (C.A.6, 1960). In our opinion he has.

In Sinclair Refining Co. v. Gutowski, 195 F.2d 637 (C.A.6, 1952), estimated profits were allowed in the computation of damages for breach of a lease of a gasoline filling station. Chief Judge Hicks, who wrote the opinion for the Court, said:

"Appellant contends that the judgment for $8,000.00 should be set

---

1. "Q. Taking into consideration your expected gross sales and your expected profit after deducting the operating expenses and all of the things that you have testified about concerning the location of the store, the area, the fact [159] that this would have been the only discount store in Nashville—the first discount store in Nashville—and all the other things that go into this, and based on your experience, do you have an opinion as to the value of the lease that Schat-

ten-Cypress agreed to give you for that 15-year period and the fair market value of that lease in a situation where there was a buyer who was willing to buy but not compelled to buy, and a seller who was willing to sell but not compelled to sell—taking those things into consideration, what is the fair market value of that lease as of February 1960?

\* \* \* \* \*

"A. I would say in the general vicinity of 200 to 250 thousand dollars."

aside because it represents the loss to appellee of prospective damages; that the Sinclair station was a new business, and that the profits therefrom to appellee would be too speculative. There was expert testimony to the effect that this amount would represent the minimum profit that would be realized. We cannot say that the amount so fixed was not the natural and probable consequences of the breach or within the reasonable contemplation of the parties. We find no reason for setting it aside or disturbing the discretion of the Court in sustaining it. See Marquette Cement Mfg. Co. v. Campbell Const. Co., 6 Cir., 184 F.2d 352, 354." (195 F.2d 640–641)

Loss of profits have been awarded as damages in Tennessee in certain types of breach of contract cases. Inland Equipment Co. v. Tennessee Foundry & Machine Co., 192 Tenn. 548, 241 S.W.2d 564 (1951); Joest v. John A. Denie's Sons Co., 174 Tenn. 410, 126 S.W.2d 312 (1939); Gardner v. Deeds & Hersig, 116 Tenn. 128, 92 S.W. 518 (1905).

In Gardner the Court cited as authority United States v. Behan, 110 U.S. 338, 344, 4 S.Ct. 81, 28 L.Ed. 168 (1883), and quoted at pages 137–138 of 116 Tenn., at page 520 of 92 S.W. the following language from the opinion:

" 'The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, viz.: First, what he had already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore in-

capable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson in the case of Masterton v. Mayor of Brooklyn, 7 Hill, 69, 42 Am.Dec. 38, they are "the direct and immediate fruits of the contract," they are free from this objection. They are then part and parcel of the contract it is entering into, and constitute a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation.' "

See also Restatement, Contracts, § 331 (1932); 25 C.J.S. Damages § 78.

 Merely because the damages may be uncertain in amount or cannot be shown with certainty in the exact amount, does not mean that they cannot be recovered. It is sufficient if the evidence shows the extent of the damage as a matter of just and reasonable inference, although the result be only approximate. Story Parchment Co. v. Patterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

Affirmed.